CASE NO. 22-1750

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

───────────────

GARY NESTLER, on behalf of themselves and all others
similarly situated;VIEWED STUDENT FEMALE 200, on
behalf of themselves and all others similarly situated;
VIEWED STUDENT MALE 300, on behalf of themselves and
all others similarly situated,

*Plaintiffs-Appellants,*

v.

HE  BISHOP OF CHARLESTON, a Corporation Sole;
BISHOP ENGLAND HIGH SCHOOL; TORTFEASORS, 1 - 10;
THE  BISHOP OF THE DIOCESE OF CHARLESTON, in his
official capacity; ROBERT GUGLIELMONE, individually*,*

*Defendants-Appellees.*

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT ABINGDON

───────────────

### OPENING BRIEF OF APPELLANTS

───────────────

David K. Lietz
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
866-252-0878
dlietz@milberg.com

Lawrence E. Richter, Jr.
RICHTER FIRM, LLC
622 Johnnie Dodds Boulevard
Mt. Pleasant, SC 29464
843-849-6000
lrichter@richterfirm.com

*Counsel for Plaintiffs-Appellants*

# DISCLOSURE STATEMENTS

Under Local Rule 26.1, the identity of each petitioner's parent corporation (if any), and any publicly held company that owns 10% or more of each petitioner's stock, is set forth below:

1. Gary Nestler is an individual party and certifies that he has no parent corporation and no stock, such that no publicly held company owns 10% or more of his stock.

2. Viewed Student Female 200 is an individual party and certifies that she has no parent corporation and no stock, such that no publicly held company owns 10% or more of her stock.

3. Viewed Student Male 300 is an individual party and certifies that he has no parent corporation and no stock, such that no publicly held company owns 10% or more of his stock.

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES....................................................................ii

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT .........................................................3

STATEMENT OF THE ISSUES.............................................................3

STATEMENT OF THE CASE ................................................................4

SUMMARY OF ARGUMENT .................................................................9

STANDARD OF REVIEW.....................................................................11

ARGUMENT ........................................................................................12

   I.    THE DISTRICT COURT ERRED IN GRANTING
        SUMMARY JUDGMENT BASED UPON AN
        ERRONEOUS CONSTRUCTION OF SOUTH
        CAROLINA LAW........................................................12

   II.   THE DISTRICT COURT FURTHER ERRED IN
        GRANTING SUMMARY JUDGMENT BASED UPON A
        *DE FACTO* CHALLENGE TO ARTICLE III STANDING.......24

   III.  THE DISTRICT COURT ABUSED ITS DISCRETION
        IN DENYING CLASS CERTIFICATION BY
        MISCONSTRUING SOUTH CAROLINA LAW ........................32

CONCLUSION .....................................................................................40

REQUEST FOR ORAL ARGUMENT....................................................40

CERTIFICATE OF COMPLIANCE.......................................................42

i

# TABLE OF AUTHORITIES

## Cases

*Amati v. City of Woodstock*,
    829 F. Supp. 998 (N.D. Ill. 1993) ................................................ 13, 14

*Brown v. Nucor Corp.*,
    785 F.3d 895 (4th Cir. 2015) ........................................................... 11

*Case v. French Quarter III, LLC*,
    No. 2:12-cv-2518, 2015 WL 12851717 (D.S.C. July 27, 2015) .......... 38

*Collier v. SP Plus Corp.*,
    889 F.3d 894 (7th Cir. 2018) ........................................................... 28

*Cont'l Cas. Co. v. S. Co.*,
    284 F. Supp. 2d 1118 (N.D. Ill. 2003) ........................................ 29-30

*Corder v. Champion Rd. Mach. Int'l Corp.*,
    283 S.C. 520, 324 S.E.2d 79 (1984) ........................................... 15, 21

*Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*,
    544 F. App'x 455 (5th Cir. 2013) .................................................... 28

*D.W. by & through Williams v. Chesterfield Cty. Sch.*,
    2018 WL 3098121 (E.D. Va. June 5, 2018), report and
    recommendation adopted, 2018 WL 3097017
    (E.D. Va. June 22, 2018) ...................................................... 27-28, 29

*Doe v. Roman Catholic Diocese of Covington*,
    No. 03-CI- 00181, 2006 WL 250694 (Ky. Cir. Ct. Jan. 31 2016) ...... 39

*Dove Air, Inc. v. Bennett*,
    226 F. Supp. 2d 771 (W.D.N.C. 2002) ........................................ 30-31

*Ealy v. Pinkerton Gov't Servs.*,
    514 F. App'x 299 (4th Cir. 2013) .................................................... 37

*Elderberry of Weber City, LLC v. Living Centers-Se., Inc.*,
    794 F.3d 406 (4th Cir. 2015) ........................................................... 11

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) ........................................................ 33

*Esparza v. Maryland Marketsource, Inc.*,
  2020 WL 869225 (D. Md. Feb. 21, 2020) .................................... 28, 30

*Friedman v. Martinez*,
  242 N.J. 449, 231 A.3d 719 (2020) ................................................. 13

*First Citizens Bank & Tr. Co., Inc. v. Taylor*,
  431 S.C. 149, 847 S.E.2d 249 (Ct. App. 2020) ................................ 26

*French v. Assurance Co. of Am.*,
  448 F.3d 693 (4th Cir. 2006) ......................................................... 11

*Gordon v. Rothberg*,
  213 S.C. 492, 50 S.E.2d 202 (1948) ................................................ 36

*Gray v. Hearst Commc'ns, Inc.*,
  444 F. App'x 698 (4th Cir. 2011) .................................................... 37

*Grooms v. Med. Soc. of S.C.*,
  298 S.C. 399, 380 S.E.2d 855 (Ct. App. 1989) ................................ 35

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ............................................. 10, 11, 40

*Hamberger v. Eastman*,
  106 N.H. 107, 206 A.2d 239 (1964) ............................................. 13-14

*Harkey v. Abate*,
  131 Mich. App. 177, 346 N.W.2d 74 (1983) ................................. 13-14

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272, 97 Cal. Rptr. 3d 274, 211 P.3d 1063 (2009) ........... 13

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
  No. 3:20-MN-02972-JMC, 2021 WL 2718439
  (D.S.C. July 1, 2021) ............................................................. 25-26, 27

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ...................................................... 39-40

*Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund*,
    500 U.S. 72 (1991) ................................................................. 30

*Koeppel v. Speirs*,
    808 N.W.2d 177 (Iowa 2011) ............................................. 13

*Kohler v. City of Wapakoneta*,
    381 F. Supp. 2d 692 (N.D. Ohio 2005) .............................. 13

*Livingston v. Sims*,
    197 S.C. 458, 15 S.E.2d 770 (1941) .................................... 35

*Macon Cnty., Ill., v. Merscorp, Inc.*,
    968 F. Supp. 2d 959 (C.D. Ill. 2013), aff'd, 742 F.3d 711
    (7th Cir. 2014) ..................................................................... 29

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ............................................... 33

*Me. Ass'n of Interdependent Neighborhoods v.
Comm'r, Me. Dep't of Human Servs.*,
    876 F.2d 1051 (1st Cir. 1989) ............................................ 28

*Meetze v. The Associated Press*,
    230 S.C. 330, 95 S.E.2d 606 (1956) ............................ 18, 22

*North Carolina ex rel. Stein v. Eonsmoke, LLC*,
    423 F. Supp. 3d 162 (M.D.N.C. 2019) .............................. 28

*O'Shea v. Lesser*,
    308 S.C. 10, 416 S.E.2d 629 (1992) ................ 10, 16, 17, 18

*Perez v. Mountaire Farms, Inc.*,
    650 F.3d 350 (4th Cir. 2011) ............................................. 11

*Phillips v. Smalley Maint. Servs., Inc.*,
    435 So. 2d 705 (Ala. 1983) ................................................. 21

*Polo v. Innoventions Int'l, LLC*,
    833 F.3d 1193 (9th Cir. 2016) ........................................... 28

*Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*,
    74 F.3d 46 (4th Cir. 1996) ................................................. 30

*Rycroft v. Gaddy*,
   281 S.C. 119, 314 S.E.2d 39 (Ct. App. 1984) ........................ 14, 16, 18

*Santee Portland Cement Co. v. Daniel Int'l Corp.*,
   299 S.C. 269, 384 S.E.2d 693 (1989) ............................................. 35-36

*Shorter v. Retail Credit Co.*,
   251 F. Supp. 329 (D.S.C. 1966) ........................................................ 15

*Snakenberg v. Hartford Cas. Ins. Co.*,
   299 S.C. 164, 383 S.E.2d 2 (Ct. App. 1989) ......................... 22, 23, 34

*Soutter v. Equifax Info. Servs., LLC*,
   307 F.R.D. 183 (E.D. Va. 2015) ........................................................ 37

*Stillmock v. Weis Mkts., Inc.*,
   385 F. App'x 267 (4th Cir. 2010) ................................................. 37, 39

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................. 25, 26, 27

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792, 209 L. Ed. 2d 94 (2021) ........................................... 36

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ......................................................... 28

*Winget v. Winn Dixie Stores, Inc.*,
   242 S.C. 152, 130 S.E.2d 363 (1963) ................................................ 18

*Wright v. Sparrow*,
   298 S.C. 469, 381 S.E.2d 503 (Ct. App. 1989) .................................. 15

## Statutes

28 U.S.C. § 1291 ................................................................................. 3

28 U.S.C. § 1447 ............................................................................... 30

## Other Authorities

7A Charles Alan Wright et al., Federal Practice & Procedure
§ 1760 (3d ed. 2005)..................................................................33

7AA Charles Wright, Arthur Miller & Mary Kay Kane,
Federal Practice and Procedure § 1779 (3d ed. 2005) .......................38-39

Eli A. Meltz, No Harm, No Foul? "Attempted" Invasion of Privacy and
the Tort of Intrusion Upon Seclusion,
83 Fordham L. Rev. 3431 (2015) ........................................................ 20

Fed. R. App. P. 5 ............................................................................ 8

Fed. R. Civ. P. 12 .............................................................. 10, 25, 26

Fed. R. Civ. P. 23 ........................................................................... 8

Fed. R. Civ. P. 56 ................................................................... 24, 25

Restatement (Second) of Torts § 652 ........................... 13, 16, 20, 21, 22

William L. Prosser, Privacy,
48 Calif. L. Rev. 383 (1960) ........................................................... 13

## INTRODUCTION

This appeal arises out of putative class action involving the surreptitious viewing of thousands of children who were students at Bishop England High School in Charleston, South Carolina over a 20-year period. The surreptitious viewing through wholly unnecessary windows that created a viewing portal to the student locker rooms caused a gross and shocking invasion of privacy, in that the students (who were all minor children) were viewed in various states of undress.

Plaintiffs-Appellants here sought class certification of their claims against the high school, only to have the district court deny class certification based upon an erroneous misconstruction of South Carolina law as it relates to the tort of intrusion into private affairs. The district court found that the tort requires evidence of "actual viewing," and denied class certification on multiple bases (including ascertainability, standing, and predominance) because Appellants had not shown "actual viewing." However, "actual viewing" is not required for the tort of invasion into private affairs under South Carolina law, just as it isn't required for the same tort in several other states.

1

The district court's erroneous construction of South Carolina law permeates its class certification decision and is practically the sole basis for denying class certification. The district court then compounded its error by granting summary judgment against the individual plaintiffs, holding that because there was no evidence of actual viewing, there was no legally cognizable injury that would support the tort of intrusion upon seclusion. Summary judgment was also inappropriate where the challenge raised via Defendants-Appellee's motion for summary judgment was actually a challenge to Article III standing. The district court should have dismissed the case without prejudice for lack of standing, and remanded the case to the Berkeley County (South Carolina) Court of Common Pleas, rather than entering a merits adjudication and final judgment via a grant of summary judgment. The district court abused its discretion in its misconstruction of South Carolina law, in denying class certification, and in granting summary judgment. All of these rulings are permeated with the same erroneous misconstruction of South Carolina law, and all are either erroneous or an abuse of discretion. The summary judgment order of the district court

must be reversed and the Judgment vacated, and the district court's ruling on class certification must be reversed and remanded.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final order or judgment of the district court that disposes of all parties' claims. JA1654-1666.

This appeal is timely because the district court entered Judgment on June 17, 2022, and Appellants filed their Notice of Appeal within 30 days, on July 12, 2022. JA1654-1666, JA1657.

## STATEMENT OF THE ISSUES

The issues on appeal include:

1.    Whether under the *de novo* standard of review the district court erred in granting summary judgment where under South Carolina law, the tort of wrongful intrusion into private affairs does not require proof of actual viewing.

2.    Whether the district court erred in granting summary judgment when Defendant-Appellees' motion was a challenge to Article III standing, not a merits challenge.

3.      Whether the district court abused its discretion in denying class certification where under South Carolina law, the tort of wrongful intrusion into private affairs does not require proof of actual viewing.

## STATEMENT OF THE CASE

This lawsuit, originally filed in the Berkeley County (South Carolina) Court of Common Pleas and removed to federal court by Defendants-Appellees, arises out of an egregious set of circumstances whereby current and past Bishop England High School (hereinafter, "BEHS") students were made and required to disrobe, partially or fully, in each of three dressing room / locker rooms, thereby exposing themselves in the locker rooms controlled by Defendants. Each of the locker rooms (boys and girls) were subject to viewing through a large 4' by 4' plate glass window, positioned at desktop height, while students were using the dressing room / locker room facilities at BEHS since the opening of the school building on Daniel Island in the City of Charleston, South Carolina (approximately September 1, 1998) until May of 2019. The windows were covered with blinds that could be and were controlled and/or manipulated from within the viewing rooms; of course, without warning or knowledge to students or tuition payers. JA60, JA64.

4

Plaintiffs-Appellants allege that BEHS students, who are children using the locker rooms, had a reasonable expectation of privacy in the locker rooms, were unaware that they were being viewed, and that there was no legitimate purpose for use of the windows JA62, JA64, JA65, JA72, JA75-76, JA83-84, JA104-138.

After the window and viewing information became public as a result of a Defendant employee voyeur, Jeffrey Scofield, Defendants covered the windows with plywood within a matter of hours. JA72. This action was taken after the windows were in place and were being surreptitiously used to view nude and/or partially nude children for more than twenty years. JA64. At some point, and in the face of written notification not to allow or take part in the spoliation of evidence, the Defendants removed and threw away the windows and the temporary plywood coverings, and the viewing portals were permanently bricked in with cement blocks and painted to match the existing walls.

The school's use of the viewing windows to monitor students in the locker rooms invaded the privacy of Plaintiffs-Appellants, and of all other students who attended BEHS during the relevant time frame. JA71. The use of the viewing windows was common to all students who attended

Bishop England High School since 1998 when the school was constructed. *Id.* All students had to use the locker rooms. Physical Education was a core curriculum requirement for all. JA61. All students had a reasonable expectation of privacy in the locker rooms. JA63. The students' privacy was violated through the use of the windows. At no time were there any safety concerns at Bishop England that warranted the installation of the windows or their use. Further, as learned through discovery, there were never any security incidents documented through the monitoring of the children in their locker rooms, from the time of installation of the windows through the removal. Even if the windows were justified at the time of the installation, the decades long "monitoring" of naked children, under the guise of "safety" is blatant, shocking, disgusting, and reprehensible; particularly so in light of the Defendants' long history of acts of child sex abuse and coverup of same for decades. Simply put, the monitoring of naked children without their awareness, without demonstrable justification, was an invasion of their expectation of privacy in a place where privacy was a reasonable expectation.

Plaintiffs moved for class certification December 13, 2021. JA104-138.

On March 24, 2022, this Court denied the Plaintiffs' Motion for Class Certification, holding that no class was due to be certified because: A) the class wasn't ascertainable, B) the Plaintiffs' lacked standing; C) the Plaintiffs failed to demonstrate predominance, and D) the Plaintiffs failed to demonstrate superiority. *See generally* JA1471-1490.

The lynchpin of three of the bases upon which the district court denied the motion for class certification is a single legal question – whether under South Carolina law, the tort of wrongful intrusion into private affairs requires proof of actual viewing. This legal question is central to the district court's ascertainability (JA1476-1480), constitutional standing (JA1480-1484), and predominance (JA1484-1488) analyses, all of which rest upon the Court's conclusion that proof of actual viewing is required in order to establish the intrusion tort. However, the district court reached the wrong conclusion on that legal question, relying in part upon a law review student note as the authoritative answer to this important question of South Carolina law.

After the district court's ruling denying class certification, Defendants-Appellees moved for summary judgment. JA1491-1492.

On April 21, 2022, Plaintiffs-Appellants timely filed a motion for reconsideration. JA1493-1512. Plaintiffs-Appellants also filed a motion to certify the critical legal question to the Supreme Court of South Carolina, and a supporting memorandum. JA1513-1545. On May 24, 2022, the district court denied both those motions. JA1570-1573.

On June 6, 2022, Plaintiffs-Appellants filed a motion with this Court pursuant to Fed. R. App. P. 5 and Fed. R. Civ. P. 23(f) for interlocutory review of the district court's order denying class certification. This motion was timely filed under USCA4 Appeal Docket Number 22-194 with this Court. Doc. 2. Part of the rationale for seeking interlocutory review was Plaintiffs-Appellants' well-founded speculation that in the absence of immediate appellate review, the district court's order on class certification would likely be dispositive of (and a death-knell to) Plaintiffs-Appellants' case. This speculation was borne out when on June 17, 2022, the district court granted Defendants-Appellees' motion for summary judgment. JA1654-1656. The summary judgment ruling was predicated upon the same erroneous construction of South Carolina law that led to denial of class certification – namely, that in the absence of any evidence of "actual viewing" of the Plaintiffs-Appellants,

there was no legally cognizable injury that would support a claim of intrusion into private affairs. JA1655-1656.

This appeal was then timely filed on July 12, 2022.

Subsequently, on July 20, 2022, this Court denied Plaintiffs-Appellants' motion for interlocutory review. USCA4 Appeal: 22-194 Doc: 11.

## SUMMARY OF ARGUMENT

The order of the district court must be reversed and the Judgment vacated. Summary judgment was granted because the named Plaintiffs-Appellants could not show proof that they were "actually viewed" through the window into the locker rooms. The district court held that proof of "actual viewing" of the named plaintiffs was required in order to establish the tort of intrusion into private affairs, and that without proof of actual viewing, the Plaintiffs-Appellants could not establish any injury. However, South Carolina law does not require proof of actual viewing, and the district court's grant of summary judgment was erroneous.

Also, even if the district court's holding vis-à-vis the requirement of "actual viewing" is correct, the district court erred in granting summary judgment in favor of Defendants-Appellees where the challenge raised to

Plaintiffs-Appellants' claims was an Article III standing challenge. Rather than making a merits determination and granting judgment in favor of Defendants-Appellees, the district court should have dismissed the case under Rule 12(b)(1) for lack of Article III standing, if there was (as Defendants-Appellees contended) no showing of injury-in-fact. Such dismissal would be without prejudice to Plaintiffs-Appellees refiling their claims in South Carolina state court.

Moreover, the order of the district court denying class certification must be reversed and remanded. The district court abused its discretion in denying class certification where under South Carolina law, the tort of wrongful intrusion into private affairs does not require proof of actual viewing. In *O'Shea v. Lesser*, 308 S.C. 10, 17–18, 416 S.E.2d 629, 633 (1992), the South Carolina Supreme Court confirmed that under South Carolina law that "actual viewing" is not necessary to satisfy the "intrusion" element of the intrusion into private affairs tort. This Court has previously found that it is an abuse of discretion where district court misconstrued South Carolina law). *Gunnells*, 348 F.3d at 436.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed by this Court *de novo. Elderberry of Weber City, LLC v. Living Centers-Se., Inc.,* 794 F.3d 406, 411 (4th Cir. 2015), as amended (Aug. 10, 2015), citing *French v. Assurance Co. of Am.,* 448 F.3d 693, 700 (4th Cir. 2006). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Under this standard, this Court reviews the district court's findings of fact for clear error and conclusions of law *de novo. Id.,* citing *Perez v. Mountaire Farms, Inc.,* 650 F.3d 350, 363 (4th Cir. 2011) (citation omitted).

A district court's class certification order is reviewed under an abuse of discretion standard. *Brown v. Nucor Corp.,* 785 F.3d 895, 901 (4th Cir. 2015). Denial of certification based upon a misconstruction of the applicable law is abuse of discretion. *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 436 (4th Cir. 2003) (abuse of discretion where district court misconstrued South Carolina law).

# ARGUMENT

## I.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED UPON AN ERRONEOUS CONSTRUCTION OF SOUTH CAROLINA LAW.

In its order granting summary judgment in favor of Defendants-Appellants, the district court held as a matter of law that South Carolina law requires evidence of "actual viewing" in order to establish an injury under the tort of intrusion into private affairs:

> The Court finds that Defendants are entitled to summary judgment. As established by the Prior Order [denying class certification], none of the named Plaintiffs can establish that they suffered a legally cognizable injury. (Dkt. No. 84 at 7 n.2, 12-13) (noting that testimony from the named plaintiffs established none had been viewed and that, therefore, "none of these individuals suffered an 'intrusion' under *Snakenberg*, or an otherwise concrete harm") (internal citation omitted). Accordingly, as Plaintiffs "[b]y their own admissions . . . cannot establish any claim against any Defendant," see (Dkt. No. 99 at 1), Defendants are entitled to judgment as a matter of law.

JA1656. In so ruling, the district court merely compounded the error of law that it made in denying Plaintiffs-Appellants' motion for class certification – namely, the erroneous conclusion that South Carolina law requires evidence of "actual viewing" in order to establish an injury under the tort of intrusion into private affairs. However, actual viewing is not

required under South Carolina law, just as it is not required in scores of

other jurisdictions that track the Restatement (Second) of Torts § 652B.[1]

---

[1] *See Friedman v. Martinez*, 242 N.J. 449, 455–56, 231 A.3d 719, 723 (2020)("We find that an intrusion on privacy occurs when someone uses a private space where a spying device has been concealed and "the intrusion would be highly offensive to a reasonable person."*456 Restatement (Second) of Torts§ 652B. To bring a claim, the victim does not have to present direct evidence that she was secretly recorded.); *Koeppel v. Speirs*, 808 N.W.2d 177, 182–85 (Iowa 2011)("In deciding a standard for Iowa, we think it is important to keep in mind that the tort protects against acts that interfere with a person's mental well-being by intentionally exposing the person in an area cloaked with privacy. *See* William L. Prosser, Privacy, 48 Cal. L. Rev. 383, 392 (1960)[hereinafter Prosser]... Additionally, the comments and illustrations contained in the Restatement (Second) of Torts make no suggestion that the intrusion into solitude or seclusion requires someone to actually see or hear the private information. See Restatement (Second)of Torts § 652B illus. 3, at 379. Indeed, the very purpose of the tort is to protect the opening up of a private place where the plaintiff seeks seclusion. Prosser, 48 Cal. L. Rev. at 392. If the factfinder finds from the evidence that the device could not have intruded into the privacy of the plaintiff in any manner, the tort of invasion of privacy has not been committed. Yet, if the fact finder finds from the evidence that the device could have intruded into the privacy of the plaintiff, the element of intrusion is satisfied."); *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 97 Cal.Rptr.3d 274, 211 P.3d 1063, 1078 (2009) (holding a hidden video camera in plaintiffs' office that was capable of being operated by the employer established an intrusion); *Kohler v. City of Wapakoneta*, 381 F. Supp.2d 692, 704(N.D. Ohio 2005) (noting the installation of a hidden listening device or camera is enough to establish an intrusion, regardless of whether the devices were actually used, because an invasion consists of an intentional interference with a person's interest in solitude); *Amati v. City of Woodstock*, 829 F. Supp. 998 (N.D.Ill.1993)(Court found the defendant's act of placing a recording device on a private telephone line in a police station was intrusive and disruptive and that "it ruins [one's] privacy" because a person "would

The record in this case unequivocally establishes that Defendants-Appellees not only had the ability to see the minor children students through the locker room window, but that there is evidence that at least 20 students (albeit not the Plaintiffs-Appellants) were actually viewed through the offending window. JA69-71. This is sufficient to defeat Defendants-Appellees' motion for summary judgment, and the district court erred in granting Defendants-Appellees' motion.

South Carolina law sets out the invasion of privacy tort in *Rycroft v. Gaddy*, 281 S.C. 119, 124–25, 314 S.E.2d 39, 43 (Ct. App. 1984) and

---

never obtain the full benefits accorded to a private place if he or she reasonably believed someone would or could be listening." *Amati*, 829 F. Supp. at 1010. While the court only decided the tort does not require an allegation that someone actually listened, the rationale it employed emphasized that the full benefits of privacy protected by the tort are diminished when a reasonable person believes someone could have listened.); *Harkey v. Abate*, 131 Mich.App. 177, 346 N.W.2d 74, 76 (1983) ("In our opinion, the installation of the hidden viewing devices alone constitutes an interference with that privacy which a reasonable person would find highly offensive. And though the absence of proof that the devices were utilized is relevant to the question of damages, it is not fatal to plaintiff's case."); *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1964)(Court held the plaintiffs were not required to prove the defendant actually overheard or viewed the activities in a secluded place to show an intrusion occurred. Instead, it found an intrusion occurs when the defendant performs an act that had the potential to impair a person's peace of mind and comfort associated with the expectation of privacy).

*Corder v. Champion Rd. Mach. Int'l Corp.*, 283 S.C. 520, 525, 324 S.E.2d 79, 82 (Ct. App. 1984):

> In order to state a cause of action for this tort the plaintiff must allege: (1) the unwarranted appropriation or exploitation of his personality; or (2) the publicizing of his private affairs with which the public has no legitimate concern; or (3) the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Rycroft* and *Corder* made plain that there are three separate "sub-torts" (or "complex of several torts," as noted in *Shorter v. Retail Credit Co.*, 251 F. Supp. 329, 330 (D.S.C. 1966)) under the broader tort of invasion of privacy. *See also Wright v. Sparrow*, 298 S.C. 469, 471, 381 S.E.2d 503, 505 (Ct. App. 1989) (identifying same 3 sub torts).

The Court of Appeals in *Rycroft* went on to set forth the required elements of the intrusion into private affairs claim. The *Rycroft* court held that:

> When a plaintiff bases an action for invasion of privacy on "intrusion" alone, bringing forth no evidence of public disclosure, it is incumbent upon him to show a blatant and shocking disregard of his rights, and serious mental or physical injury or humiliation to himself resulting therefrom. *Shorter v. Retail Credit Co.*, 251 F. Supp. 329 (D.S.C.1966).

*Rycroft*, 281 S.C. at 124–25, 314 S.E.2d at 43. The *Rycroft* court's statement "bringing forth no evidence of public disclosure" is a recognition that "public disclosure" is not a necessary element of the intrusion tort, if a plaintiff can show "a blatant and shocking disregard of his rights, and serious mental or physical injury or humiliation to himself resulting therefrom." This tracks in complete harmony with the Second Restatement of Torts § 652(B), which does not require acquisition of information for the intrusion tort. *See* Restatement (Second) of Torts § 652B cmt. a (1977) (explaining that the form of invasion of privacy covered by intrusion upon seclusion —consists solely of an intentional interference with the plaintiff's seclusion and does not depend on publicity given to the plaintiff's private affairs).

In *O'Shea v. Lesser*, 308 S.C. 10, 17–18, 416 S.E.2d 629, 633 (1992), the South Carolina Supreme Court expressly relied upon the language in *Rycroft* and established under South Carolina law that "actual viewing" is <u>not</u> necessary to satisfy the "intrusion" element of the intrusion into private affairs tort. A close reading of *O'Shea* bears this out. *O'Shea* involved a dispute between residential property neighbors over

construction of an open outdoor deck. After the deck was constructed, the
neighbors who built the deck:

> can see around appellant's patio wall into a portion of
> appellant's home from the end of their addition. Appellant
> asserts that as a result of the Lessers' ability to see into her
> house, she has been forced to change her lifestyle to avoid
> being watched by the Lessers.

*O'Shea*, 308 S.C. at 13–14, 416 S.E.2d at 631. "Can see," and the "ability
to see" into the neighboring house establishes that the intrusion claim
asserted wasn't about "actual viewing," but rather was about the "ability
to see."

While the South Carolina Supreme Court in *O'Shea* ultimately
ruled against the appellant, it did not do so because the court found that
actual viewing was required:

> Appellant asserts that the master-in-equity erred in finding
> that appellant suffered no damages even though (1) the
> Lessers *can see* into her home, thereby allegedly invading her
> right to privacy, and (2) the improvements to the Lessers'
> residence allegedly diminish her right to a view. We disagree.

> This Court has defined invasion of privacy as:

>> The unwarranted appropriation or
>> exploitation of one's personality, the
>> publicizing of one's private affairs with
>> which the public has no legitimate concern,
>> or the wrongful intrusion into one's private
>> activities, in such manner as to outrage or

17

> cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

*Meetze v. The Associated Press*, 230 S.C. 330, 95 S.E.2d 606 (1956). Where, as here, a plaintiff bases an action for invasion of privacy on "intrusion," bringing forth no evidence of public disclosure, it is incumbent upon him to show a blatant and shocking disregard of his rights, and serious mental or physical injury or humiliation to himself resulting therefrom. *Rycroft v. Gaddy*, 281 S.C. 119, 314 S.E.2d 39 (Ct.App.1984).

The fact that the Lessers *can see* into a portion of appellant's home is not so blatant or shocking as to constitute an invasion of appellant's right to privacy. People who live in organized communities must of necessity suffer some inconvenience and annoyance from their neighbors and must submit to annoyances which are the consequence of the reasonable use of property by others. *Winget v. Winn Dixie Stores, Inc.*, 242 S.C. 152, 130 S.E.2d 363 (1963).

*O'Shea*, 308 S.C. at 17–18, 416 S.E.2d at 633 (emphasis added). The South Carolina Supreme Court held that it is possible to satisfy the intrusion element with the mere ability to see ("can see"), <u>not actual viewing</u>, if the plaintiff shows it is so "blatant or shocking" as to constitute an invasion of the right to privacy. *Id.*

In *O'Shea*, the court didn't find that the mere ability to see was blatant or shocking enough and chalked it up to "inconvenience and annoyance from the neighbors." However, that doesn't negate the proposition that the South Carolina Supreme Court's formulation of the

18

intrusion element unambiguously contemplates satisfaction of the intrusion element by the mere "ability to see," if the ability to see is so blatant and shocking as to constitute an invasion of privacy.

The case before the district court presented just such a "blatant and shocking" situation. The ability to see school aged children without clothes on is a far cry from the mere inconvenience of having one's neighbors potentially peering into one's windows (a situation easily rectified by putting up window treatments). The undisputed facts before the district court demonstrated not only that Defendants-Appellees "can see" or were able to see Plaintiffs-Appellants and every other student-in spite of the use of window treatments- but actually "did see" numerous students that were "actually viewed" by at least one employee. JA69-71. That is a textbook definition of "blatant and shocking."

The record in this case further shows that with the blinds closed (a fact to which Defendants-Appellees testified), the use of the windows operated as a peep hole per the architect's admission. JA106-107. The Defendants-Appellees conceded wholesale monitoring (quite arguably "actual viewing") of the students through the use of the blind covered windows since the school was built in 1998. JA106-108. The Defendants-

Appellees also were able to see their students in a private place in which the students had a legitimate expectation of privacy. JA107-108. Although the district court did not address or analyze whether the Defendant-Appellees' ability to see unclothed children without their awareness is "so blatant or shocking as to constitute an invasion of privacy," it is.

Instead of focusing on *O'Shea* and South Carolina law, the district court relied upon a law student note. Eli A. Meltz, No Harm, No Foul? "Attempted" Invasion of Privacy and the Tort of Intrusion Upon Seclusion, 83 Fordham L. Rev. 3431 (2015). While the Meltz Note is a fine piece of legal scholarship, it ignores *O'Shea* entirely. The Meltz note is simply wrong that South Carolina's formulation of the intrusion into private affairs cause of action differs from intrusion under the Restatement (Second) of Torts, § 652B, which does not require acquisition of information to recover.[2]    Tellingly, the Second Restatement's formulation of this element (noting that it does not depend on publicity) tracks with the language in *Rycroft*.

---

[2] Moreover, a law student note, however artfully written, cannot be the authoritative statement of South Carolina law on the intrusion element.

What is plain from the language of *O'Shea* and *Rycroft* is that contrary to the conclusion of the Meltz note, South Carolina law is, and always has been, in accord with section 652B of the Second Restatement of Torts, which doesn't require acquisition of information ("actual viewing") to recover. *See Phillips v. Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 709 (Ala. 1983) (holding that "acquisition of information from a plaintiff is not a requisite element of a § 652B cause of action"). There is also nothing to suggest that the law in South Carolina is any different on this point than the law in those jurisdictions that expressly adopted the Second Restatement construction. South Carolina's division of the invasion of privacy tort into a "complex" of three separate torts mirrors the Second Restatement's division of the invasion of privacy tort into 4 separate torts (three of which are the same as in South Carolina). *Compare* Restatement (Second) of Torts, § 652B (intrusion upon seclusion), § 652C (appropriation of name or likeness), and § 652D (publicity given to private life) with *Corder,* 283 S.C. at 525, 324 S.E.2d at 82 (recognizing torts of 1) the unwarranted appropriation or exploitation of his personality; or (2) the publicizing of his private affairs

with which the public has no legitimate concern; or (3) the wrongful intrusion into one's private activities.

Also, section 652B of the Second Restatement defines the intrusion tort in this way:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977). South Carolina defines the same tort this way:

> The . . . the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

*Meetze*, 230 S.C. at 335, 95 S.E.2d at 608. There is no question that the Second Restatement and South Carolina are talking about the same tort. Given *O'Shea* and *Rycroft*, there is equally no question that South Carolina already interprets the identical tort in the same manner, and that "actual viewing" is not required.

In addition to relying upon the law student note, the district court relied almost exclusively upon *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 171, 383 S.E.2d 2, 6 (Ct. App. 1989) to reach the erroneous

conclusion that actual viewing is required for intrusion into private affairs under South Carolina law. Notably, *Snakenberg* is an "actual viewing" case, where the plaintiff concealed a video tape camera and recorder in a dressing room and was filming and recording teenage girls changing from swimsuit to swimsuit. *Snakenberg*, 299 S.C. at 167, 383 S.E.2d at 4. As an "actual viewing" case, there was no reason for the *Snakenberg* court to consider the question of whether or not "actual viewing" is a required element of the intrusion tort. Nevertheless, the *Snakenberg* court undertook the task of examining the "nature and scope" of the intrusion tort. *Id.*, 299 S.C. at 171, 383 S.E.2d at 6. As part of this examination, the *Snakenberg* court – without citation to any legal authority – defined the "intrusion" element of the wrongful intrusion into private affairs tort as follows:

> (1) Intrusion. An intrusion may consist of watching, spying, prying, besetting, overhearing, or other similar conduct. Whether there is an intrusion is to be decided on the facts of each case.

*Id.* This definition of the intrusion element was wrongly interpreted by the district court to mean that "actual viewing" is required to satisfy this element of the tort. While the language of the South Carolina Supreme Court's rulings in *O'Shea* and *Rycroft* are unambiguous, *Snakenberg*

23

muddied the waters enough to send the district court down the wrong path.

The district court completely misconstrued South Carolina law relative to an "actual viewing" requirement for the intrusion into private affairs tort. Where this was the sole basis for its grant of summary judgment, what is apparent is that application of the proper construction of South Carolina law compels a different result. Under the record in this case showing unequivocal evidence of the "ability to see," the Plaintiffs-Appellants demonstrated that they suffered an injury, and the district court erred in granting summary judgment.

## II. THE DISTRICT COURT FURTHER ERRED IN GRANTING SUMMARY JUDGMENT BASED UPON A *DE FACTO* CHALLENGE TO ARTICLE III STANDING.

The district court also erred in granting summary judgment based upon what was indisputably a challenge to the district court's jurisdiction. While not expressly stated, Defendants-Appellees' "summary judgment motion" was purportedly brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Granting the motion is a merits determination of the named Plaintiffs-Appellees' claims. However, even a cursory reading of Defendants-Appellees' summary

judgment motion shows that the challenge to Plaintiffs-Appellees' claims was not in fact a merits challenge. Rather, the plain language of Defendants'-Appellees' argument states that Plaintiffs'-Appellees' claims should be dismissed because without evidence of "actual viewing," the Plaintiffs-Appellees' could not satisfy the injury-in-fact requirement that would imbue them with Article III standing:

> Based upon the Court's Order denying class certification [Dkt. 84], and the determination that Plaintiffs do not have constitutional standing to assert the claims alleged in the Amended Complaint [ECF 35][ Order, pp. 12-14], Defendants move for summary judgment as to all claims. As the Court determined, none of the Plaintiffs have established "a concrete harm that would confer Article III standing." [Id. citing *TransUnion, LLC v. Ramirez*, 141 S.Ct. 2190, 2200 (2021).

JA1491. Challenges to standing are brought under Federal Rule of Civil Procedure 12(b)(1), not under Rule 56. Defendants-Appellees' motion was thus procedurally infirm, and did not warrant a merits dismissal via a grant of summary judgment.

"Challenges to Article III standing are addressed under Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction." *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *4 (D.S.C.

July 1, 2021). Even if the district court's interpretation of South Carolina law regarding the "actual viewing" requirement was correct (which it is not), the proper ruling by the district court would have been to then dismiss the Plaintiffs-Appellees' claims under Rule 12(b)(1) for lack of subject matter jurisdiction.

This is a distinction with a major difference, as such dismissal would be without prejudice, giving Plaintiffs-Appellees an opportunity to re-file their case in South Carolina state court. Unlike the federal courts, the South Carolina trial courts are courts of general jurisdiction. South Carolina law holds "[s]ubject matter jurisdiction refers to a court's constitutional or statutory power to adjudicate a case." *First Citizens Bank & Tr. Co., Inc. v. Taylor*, 431 S.C. 149, 162, 847 S.E.2d 249, 256 (Ct. App. 2020) (internal citations omitted). It is therefore entirely possible that a case that cannot remain in federal court due to lack of Article III subject matter jurisdiction could be adjudicated in the South Carolina courts.

Notably, the only case cited by Defendants-Appellees in support of their motion for summary judgment was *TransUnion, LLC v. Ramirez,* 141 S.Ct. 2190 (2021). *TransUnion* was a case where certain class

members' claims were dismissed for lack of standing after a full jury trial. The United States District Court for the District of South Carolina distinguished *TransUnion* in *In re Blackbaud, supra*, because the court did "not have the 'helpful benefit of a jury verdict' at this phase of the litigation." *In re Blackbaud*, 2021 WL 2718439, at *6 (quoting *TransUnion*, 141 S.Ct. at 2222 (Thomas, J., dissenting)). Here, there was obviously no jury verdict, and *TransUnion* is inapplicable. And even if *TransUnion* does have applicability, *TransUnion* is a case about Article III standing, where certain plaintiffs' claims were dismissed for lack of standing, not because the claims failed on the merits. The district court erred in granting summary judgment, when at best it could have dismissed the case (without prejudice) on standing grounds.

Not only that, but in cases like this one where the Defendants-Appellees removed this case to federal court, the district court must remand the case to the state court in which it was originally filed upon dismissal for lack of Article III standing. Although "the Fourth Circuit has yet to hold that a defendant's failure to establish Article III standing in a removed case requires remand of the civil action to state court, other circuit courts of appeal have so held." *D.W. by & through Williams v.*

*Chesterfield Cty. Sch.*, 2018 WL 3098121, at \*6 (E.D. Va. June 5, 2018), report and recommendation adopted, 2018 WL 3097017 (E.D. Va. June 22, 2018)(citing *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) ("As the party invoking federal jurisdiction, [the defendant] had to establish that all elements of jurisdiction—including Article III standing—existed at the time of removal."); *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016); *Wallace v. Conagra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014); *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, 544 F. App'x. 455 (5th Cir. 2013); *Me. Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of Human Serv.*, 876 F.2d 1051 (1st Cir. 1989)). District courts within the Fourth Circuit have also held that a lack of Article III standing requires remand of a case removed to federal court. *See, e.g., Williams*, 2018 WL 3098121; *North Carolina ex rel. Stein v. Eonsmoke, LLC*, 423 F. Supp. 3d 162 (M.D.N.C. 2019); *Esparza v. Maryland Marketsource, Inc.*, 2020 WL 869225, at \*1 (D. Md. Feb. 21, 2020).

In *Williams*, the district court addressed a case that presented "an unusual procedural posture where a defendant removes a case filed in state court, invoking federal subject matter jurisdiction, and then

challenges that jurisdiction in a motion to dismiss." 2018 WL 3098121 at

*1. When the *Williams* plaintiffs moved to remand, "Defendants claimed

removal was proper because the claim arose under a federal statute and,

thus, satisfied the requirements of federal question jurisdiction." *Id.* at

*4. However, the *Williams* court ultimately held that "because

Defendants bear the burden of establishing the existence of federal

subject matter jurisdiction—including Article III standing—in this

removed case, the unopposed Motion to Dismiss functionally serves as

Defendants' admission that they cannot meet their burden." *Id.* at *7.

Here too, Defendants-Appellees motion for summary judgment

claiming that Plaintiffs-Appellees lack Article III standing is an

admission not only that the district court lacked subject matter

jurisdiction over this case in the first place, and that the removal of the

case was improper, as it could not have been brought in federal court

originally. Courts faced with efforts to dismiss a case for lack of subject

matter jurisdiction after removing the case to federal court have

described such efforts as "perplexing" and "somewhat confused." *See*

*Macon Cnty., Ill. v. Merscorp, Inc.*, 968 F. Supp. 2d 959, 964 (C.D. Ill.

2013), aff'd, 742 F.3d 711 (7th Cir. 2014); *Cont'l Cas. Co. v. S. Co.*, 284 F.

Supp. 2d 1118, 1120 (N.D. Ill. 2003). As the Court explained in

*Continental Casualty Co.*:

> [Defendant] cannot have it both ways. Either I have subject
> matter jurisdiction and the case was properly removed, or I do
> not have subject matter jurisdiction and the case must be
> remanded to state court. I may not dismiss this case for lack
> of subject matter jurisdiction.

*Continental Casualty Co*, 284 F. Supp. 2d at 1120-21.

A federal court must remand to state court any case that has been

improperly removed. 28 U.S.C. § 1447(c) provides, "If at any time before

final judgment it appears that the district court lacks subject matter

jurisdiction, the case shall be remanded." The Fourth Circuit makes no

exception to this rule, stating, "The plain language of § 1447(c) gives 'no

discretion to dismiss rather than remand an action' removed from state

court over which the court lacks subject-matter jurisdiction."[3] *Roach v.*

*W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48-49 (4th Cir. 1996)

(quoting *Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund*,

500 U.S. 72, 79 (1991)); *see also Dove Air, Inc. v. Bennett*, 226 F. Supp.

---

[3] Although some circuits have recognized a narrow "futility" exception to
§ 1447(c) where a defendant argues that remand to state court would be
futile, courts within the Fourth Circuit have recognized the "no
discretion" language in Roach forecloses any kind of futility exception.
*See, e.g., Esparza*, 2020 WL 869225 at *6.

2d 771, 773 (W.D.N.C. 2002)("If the Defendants are indeed correct that there is no subject matter jurisdiction, the undersigned is compelled to remand the case to state court and has no authority to dismiss or transfer the action.").

Based upon well-settled Fourth Circuit case law, this demonstrates that the district court here erred in granting summary judgment based upon an alleged lack of standing. Even if the district court was correct in finding no standing, the proper result was dismissal without prejudice, and a mandatory remand to the Berkeley County (South Carolina) Court of Common Pleas, where the case was originally filed. JA19.

Moreover, the district court entered summary judgment, a merits determination, without Plaintiffs-Appellees having had a full and fair opportunity to conduct discovery on the merits of their claims, as discovery was limited by the district court solely to the issue of class certification. Manifest injustice results when a court grants summary judgment without allowing Plaintiffs-Appellees to complete merits discovery, fairly and generally, perhaps thereby uncovering a key piece of evidence to resist and defeat summary judgment, an extraordinary remedy.

### III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING CLASS CERTIFICATION BY MISCONSTRUING SOUTH CAROLINA LAW.

The district court's ruling denying class certification also misconstrues South Carolina law relating to the tort of intrusion into private affairs. Specifically, the district court itself acknowledged that central to the court's findings relative to ascertainability, standing, predominance, and superiority (the four factors upon which the district court relied in denying class certification) "was the Court's holding that the tort of wrongful intrusion into private affairs required actual viewing." JA1571. But the district court misconstrued South Carolina law, which does <u>not</u> require actual viewing. This erroneous interpretation of law permeates the district court's entire class certification analysis. When this Court applies the proper construction of South Carolina law, it is manifest that the district court abused its discretion in denying class certification. This Court should reverse this decision, and remand the case to the district court to reconsider class certification under the proper construction of South Carolina law.

Had the district court not interpreted South Carolina law as requiring "actual viewing" to establish the tort of intrusion into private

affairs, the proposed class of students that were capable of being seen is easily ascertainable -- i.e. all students that attended Bishop England High School during the relevant time periods, as set forth in the Plaintiffs-Appellants' class certification motion. JA104-138. The Plaintiffs-Appellants "need not be able to identify every class member at the time of certification." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). But "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.*, citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012); see also 7A Charles Alan Wright et al., Federal Practice & Procedure § 1760 (3d ed. 2005) ("[T]he requirement that there be a class will not be deemed satisfied unless ... it is administratively feasible for the court to determine whether a particular individual is a member."). Here, Defendants-Appellees have records of all those students who attended the school during the relevant time frame, and ascertainability does not require mini-trials. When stripped of the erroneous finding that South Carolina law requires "actual viewing" to establish the intrusion tort, the district court's abuse of discretion is manifest.

The same is true with the district court's findings relating to standing. The district court rooted its opinion that Plaintiffs-Appellants have no constitutional standing on the grounds that they were not "actually viewed," and suffered no harm or injury. "Actual viewing" is not a precursor to sustaining injury, and is a reason why jurisdictions have allowed the intrusion tort without a proof of viewing. The very authority primarily relied upon by the district court – *Snakenberg* – makes this point. It is here that *Snakenberg's* near strict liability analysis of liability to import damages satisfies the injury-in-fact and damages requires for standing:

> In an action for wrongful intrusion into private affairs, **the damage consists of the unwanted exposure** resulting from the intrusion. Thus, if the plaintiff proves the four elements needed to establish his cause of action, **the fact of damage is established as a matter of law**. The amount of damage is then to be assessed by the trier of fact. In assessing the damage, the trier of fact may consider the shame, humiliation, and emotional distress suffered by the plaintiff as compensable elements of damage.

*Snakenberg*, 299 S.C. at 171–72, 383 S.E.2d at 6 (emphasis added).

*Snakenberg* is consistent with the notion that damages are essentially presumed if the act is committed and that "the damage consists of the unwanted exposure." Put a different way, if it was South Carolina law

34

that "actual viewing" was required, *Snakenberg* would not set forth that damages were established automatically as a matter of law. To the contrary, *Snakenberg* would require proof of "actual damages," which it does not. South Carolina law regarding nominal damages is consistent with *Snakenberg's* treatment of presumed damages:

> The law presumes the existence of at least nominal damages for the violation or infringement of a legal right. . . The fact that substantial damages either were not discovered or did not occur until sometime later is of no consequence. . . .The act that is the basis for the action cannot be legally separated from its consequences and successive actions may not be brought as the damages develop.

*Grooms v. Med. Soc. of S.C.*, 298 S.C. 399, 402–03, 380 S.E.2d 855, 857 (Ct. App. 1989) (internal citations omitted). South Carolina courts have further held that:

> "It follows that a cause of action for damages is not on the one hand the damage suffered by plaintiff, nor on the other hand the mere evidentiary facts showing the defendant's wrong; but it is the wrong itself done by defendant to plaintiff, that is, the breach of duty by the defendant to the plaintiff, **whether it is the duty arising out of a contract or of tort. Every violation of a legal right imports damage and authorizes the maintenance of an action and the recovery of at least nominal damages, regardless of whether any actual damage has been sustained.**"

*Livingston v. Sims*, 197 S.C. 458, 15 S.E.2d 770, 772 (1941)(emphasis added) *overruled on other grounds* by *Santee Portland Cement Co. v.*

*Daniel Int'l Corp.*, 299 S.C. 269, 384 S.E.2d 693 (1989). See also*, Gordon v. Rothberg*, 213 S.C. 492, 504, 50 S.E.2d 202, 208 (1948)("Where, as in this case, the legal rights of the respondent had been invaded, the law presumes that he suffered some actual damages, and it was therefore not improper for the trial judge to direct a verdict for such form of damages against the appellants, leaving the amount thereof to be determined by the jury.")

As it relates to the district court's standing analysis in its order on class certification, South Carolina law's treatment of nominal damages is on point with the United States Supreme Court's recent affirmation that nominal damages provide redressability for Article III standing under the United States Constitution: "The law tolerates no farther inquiry than whether there has been the violation of a right." [citation omitted] When a right is violated, that violation "imports damage in the nature of it" and "the party injured is entitled to a verdict for nominal damages." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800, 209 L. Ed. 2d 94 (2021). "[f]or the purpose of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right." *Uzuegbunam* 141 S. Ct. at 802. Accordingly, Plaintiffs-Appellants

established standing as they have brought forth testimony of their injuries consistent with the types of damages alleged for invasion of privacy when they were not "actually viewed," but when they were capable of being viewed.

When the erroneous "actual viewing" requirement applied by the district court is done away with, predominance is established as well. The predominance inquiry measures the relative weight of the common questions as against individual ones. *See Amchem,* 521 U.S. at 623. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant."). Predominance is

established when the liability is common to all. *Case v. French Quarter III, LLC*, No. 2:12-cv-2518, 2015 WL 12851717, at *6 (D.S.C. July 27, 2015) ("In mass tort cases, common issues of law and fact have been held to predominate 'where the same evidence would *resolve* the question of liability for all class members.").

As noted above, proof of actual viewing is not required under *O'Shea*, and the evidence proffered that the students right to privacy was invaded without any justification resolves liability as to all class members. Damages are the "established as a matter of law" under *Snakenberg*. Accordingly, the district court's concern that "[w]hether any student suffered any injury at any time will completely depend on individualized evidence," is eliminated *a priori* as damages are established to all those who were able to be viewed in the locker rooms.

Finally, had the district court determined that "actual viewing" is not required, class-wide treatment of Plaintiffs-Appellants' claims is the superior vessel to manage thousands of identical claims. As such, the district court abused its discretion in holding that the superiority requirement was not met. "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7AA Charles Wright, Arthur Miller &

Mary Kay Kane, Federal Practice and Procedure § 1779 (3d ed. 2005). Litigating the same claims of thousands of students through individual litigation would obviously be inefficient. Collective action is plainly superior in cases involving victims of assault or abuse often do not wish to subject themselves to litigation, whether to avoid making their experience public, having to testify about it, or having to confront their abuser in court. *See, e.g.*, *Doe v. Roman Catholic Diocese of Covington*, No. 03-CI- 00181, 2006 WL 250694, at *5 (Ky. Cir. Ct. Jan. 31, 2016). As the district court itself noted, superiority often is met in two situations -- either where "many individuals have small damage claims" and where, absent a class suit, "it is unlikely that any of the claims will be accorded relief." JA1489. The certification of a class in this case would facilitate a procedural avenue to rectify a wrong to which all students have damages established as a matter of law under *Snakenberg*. If not for the procedural vehicle of the class action, the thousands of students whose privacy rights were violated would not realistically have the financial ability or incentive to bring this case. *See Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010) (the low amount of statutory damages available makes an individual action unattractive from a plaintiff's perspective); *see also In re Whirlpool Corp. Front–Loading*

*Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir.2013)(stating that "class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery").

Also, class certification promotes consistency of results, giving Defendants-Appellees the benefit of finality and repose. *Gunnells,* 348 F.3d at 429 (in contrast to class action proceeding, individual actions make a defendant vulnerable to the asymmetry of collateral estoppel, thus, class certification promotes consistency of results, giving defendant benefit of finality and repose). This too demonstrates that the superiority element was met, and the district court abused its discretion in denying class certification.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of summary judgment, reverse the district court's denial of class certification, and remand this matter to the district court for further proceedings consistent with this ruling.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs-Appellants respectfully request oral argument, as the factual issues in this detailed yet brief record may require further explanation to aid this Honorable Court in its decision.

Respectfully submitted,

*s/David K. Lietz*

David K. Lietz
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

Lawrence E. Richter, Jr.
RICHTER FIRM, LLC
622 Johnnie Dodds Boulevard
Mt. Pleasant, SC 29464
843-849-6000
lrichter@richterfirm.com

Carl L. Solomon (Fed. Bar: 6684)
Solomon Law Group, LLC
P.O. Box 1866
Columbia, SC 29202
Phone: 803-391-3120
carl@solomonlawsc.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this Opening Brief of Appellants contains 8,422 words and therefore complies with the word limitation established by the Fourth Circuit Rule 28.1(e)(2), which sets a 13,000-word limit on opening briefs produced using a computer.

This Opening Brief of Appellants also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared in Century Schoolbook 14-point typeface using Microsoft Office Word.

*/s/David K. Lietz*
David K. Lietz
