No. 22-1750

**In The**
**UNITED STATES COURT OF APPEALS**
**For The Fourth Circuit**

GARY NESTLER, on behalf of themselves and all others similarly situated; VIEWED STUDENT FEMALE 200, on behalf of themselves and all others similarly situated; VIEWED STUDENT MALE 300, on behalf of themselves and all others similarly situated

Plaintiffs - Appellant

v.

THE BISHOP OF CHARLESTON, a Corporation Sole; BISHOP ENGLAND HIGH SCHOOL; TORTFEASORS, 1-10; THE BISHOP OF THE DIOCESE OF CHARLESTON, in his official capacity; ROBERT GUGLIELMONE, individually

Defendants - Appellees

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
The Honorable Richard M. Gergel, District Judge
(2:21-cv-00613-RMG)

———————————————————

**BRIEF OF APPELLEES**

———————————————————

Richard S. Dukes, Jr., Fed. ID # 7340
Turner Padget Graham & Laney, P.A.
40 Calhoun Street, Suite 200
Charleston, SC 29401
Phone: (843) 576-2810
RDukes@TurnerPadget.com

Carmelo B. Sammataro, Fed. ID # 9174
Turner Padget Graham & Laney, P.A.
Post Office Box 1473
Columbia, SC 29202
Phone: (803) 254-2200
SSammataro@TurnerPadget.com

*Counsel for Defendants - Appellees*

## <u>DISCLOSURE STATEMENTS</u>

Under Local Rule 26.1, the identity of each Appellee's parent corporation (if any), and any publicly held company that owns 10% or more of each Appellee's stock is set forth below:

1.     Bishop of Charleston, a Corporation Sole is an entity chartered by the State of South Carolina.  It has no parent corporation and no stock.  As such, no publicly held company owns 10% or more of its stock.

2.     Bishop England High School is an operation and ministry of Bishop of Charleston, a Corporation Sole.  The school has no separate corporate existence and has no stock.  As such, no publicly held company owns 10% or more of its stock.

3.     The Bishop of the Diocese of Charleston, in his official capacity, is an ecclesiastical office.  The office of Bishop has no parent corporation and no stock.  As such, no publicly held company owns 10% or more of its stock.

4.     Robert Guglielmone is an individual party and certifies that he has no parent corporation and no stock.  As such, no publicly held company owns 10% or more of its stock.

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................iv

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF THE ISSUES............................................................3

STATEMENT OF CASE ......................................................................4

SUMMARY OF THE ARGUMENT ......................................................9

ARGUMENT ....................................................................................10

    A.    THE DISTRICT COURT PROPERLY DENIED CLASS CERTIFICATION....................................................................11

          STANDARD FOR CLASS CERTIFICATION......................................11

          1.  Having determined Appellants could not establish they suffered a legally cognizable injury-in-fact, the district court correctly denied class certification because the proposed classes were impermissible fail-safe classes that could not comply with Fed. R. Civ. P. 23 ........................................................15

          2.  The district court correctly determined Appellants failed to establish they had standing to sue – thus, Appellants were not even members of the classes they purported to represent, and the classes could not be certified........................................................19

          3.  The record before the district court reflects Appellants failed to establish a reliable method of calculating class-wide damages; thus, denial of certification was warranted and correct ................................................................21

ii

4.  The district court correctly denied class certification where Appellants failed to establish either of the stringent Rule 23(b)(3) requirements of predominance and superiority ...................22

a)  Appellants failed to establish the required element of predominance, and the district court did not abuse its discretion in denying class certification.........................................23

Gary Nestler and the proposed parent class ...................................24

The former students and the proposed "viewed" class .................25

b)  Appellants failed to establish the required element of the superiority of the class device, and the district court did not abuse its discretion in denying class certification..........................26

5.  Because Appellants utterly failed to establish any Rule 23 requirement, the district court did not abuse its discretion in denying class certification..................................................................28

B.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON ALL CAUSES OF ACTION ......................................29

C.  AS ALTERNATE SUSTAINING GROUNDS, THE RECORD REFLECTS THE LOCKER ROOM DESIGN AT BISHOP ENGLAND MET THE STANDARD OF CARE AND CANNOT BE DEEMED A BLATANT AND SHOCKING DISREGARD OF THE STUDENTS' RIGHTS THAT WOULD PERMIT RECOVERY FOR ANY PRESUMED INVASION OF PRIVACY....................................................................................31

D.  APPELLANTS' SUGGESTION OF REMAND TO STATE COURT FOR FURTHER PROCEEDINGS IS INAPPROPRIATE .................................................................................34

CONCLUSION..................................................................................................36

CERTIFICATE OF COMPLIANCE..................................................................37

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................................. 12, 13

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
328 F.R.D. 6 (D. Mass. 2018) ........................................................................ 17

*Bigelow v. Syneos Health, L.L.C.*,
2020 U.S. Dist. LEXIS 155791 (E.D.N.C. Aug. 27, 2020) ............................. 16

*Brannum v. Overton Cnty. Sch. Bd.*,
516 F.3d 489 (6th Cir. 2008) ........................................................................... 31

*Brecher v. Republic of Argentina*,
802 F.3d 303 (2d Cir. 2015) ............................................................................. 18

*Bright v. Asset Acceptance, Inc.LLC*,
292 F.R.D. 190 (D.N.J. 2013) ..................................................................... 21, 22

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ........................................................................... 14

*Brown v. Electrolux Home Prods., Inc.*,
817 F.3d 1225 (11th Cir. 2016) .................................................................. 22, 23

*Buetow v. A.L.S. Enters.*,
650 F.3d 1178 (8th Cir. 2011) ......................................................................... 35

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015) ............................................................................ 17

*Casillas v. Madison Ave. Assocs.*,
926 F.3d 329 (7th Cir. 2019) ........................................................................... 19

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ....................................................................... 13, 26

*Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*,
768 F.3d 425 (5th Cir. 2014) ........................................................................... 35

*Cherry v. Dometic Corp.*,
986 F.3d 1296 (11th Cir. 2021) ....................................................................... 35

*Comcast v. Behrend*,
    133 S. Ct. 1426, 569 U.S. 27 (2013) ................................................. 11, 12, 21, 23

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) ........................................................... 17

*Crosby v. Soc. Sec. Admin.*,
    796 F.2d 576 (1st Cir. 1986) ................................................................ 16

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. 2020) ............................................................... 23

*Cunningham Charter Corp. v. Learjet, Inc.*,
    592 F.3d 805 (7th Cir. 2010) ............................................................... 35

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ............................................................................ 20

*Dean v. Ruscon Corp.*,
    321 S.C. 360, 468 S.E.2d 645 (1996) ................................................... 30

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) .................................... 11, 12, 13, 16, 22

*F5 Capital v. Pappas*,
    856 F.3d 61 (2d Cir. 2017) .................................................................. 35

*Gariety v. Grant Thornton, LLP*,
    368 F.3d 356 (4th Cir. 2004) ............................................... 13, 14, 23

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ...................................................................... 11, 12

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) .............................................................. 14

*Harnish v. Widener Univ. Sch. of Law*,
    833 F.3d 298 (3d Cir. 2016) ............................................................... 23

*In re Burlington N. Santa Fe Ry. Co.*,
    606 F.3d 379 (7th Cir. 2010) ............................................................... 35

*In re Nexium Antitrust Litig.*,
    777 F.3d 9 (1st Cir. 2015) .................................................................... 17

*John v. Nat'l Sec. Fire & Cas. Co.,*
    501 F.3d 443 (5th Cir. 2007) ................................................................ 16

*Krakauer v. Dish Network, L.L.C.,*
    925 F.3d 643 (4th Cir. 2019) ................................................................ 16

*Louisiana v. Am. Nat'l Prop. & Cas. Co.,*
    746 F.3d 633 (5th Cir. 2014) ................................................................ 35

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................. 20

*Marcus v. BMW of N. Am., LLC,*
    687 F.3d 583 (3d Cir. 2012) ................................................................ 16

*McCaster v. Darden Rests., Inc.,*
    845 F.3d 794 (7th Cir. 2017) ................................................................ 17

*Meetze v. Associated Press,*
    230 S.C. 330, 95 S.E.2d 606 (1956) ........................................... 15, 31

*Metz v. Unizan Bank,*
    649 F.3d 492 (6th Cir. 2011) ................................................................ 35

*Miles v. Merrill Lynch & Co.  (In re Initial Pub. Offering Sec. Litig.),*
    471 F.3d 24 (2d Cir. 2006) ................................................................... 16

*Mullins v. Direct Digit., L.L.C.,*
    795 F.3d 654 (7th Cir. 2015) ................................................................ 18

*Naparala v. Pella Corp.,*
    2016 U.S. Dist. LEXIS 72442 (D.S.C. June 3, 2016) ........................ 23

*Nutraceutical Corp. v. Lambert,*
    139 S. Ct. 710, 203 L. Ed. 2d 43 (2019) ............................................... 9

*O'Shea v. Lesser,*
    308 S.C. 10, 416 S.E.2d 629 (1992) ................................................... 15

*Orduno v. Pietrzak,*
    932 F.3d 710 (8th Cir. 2019) ................................................................ 17

*Parko v. Shell Oil Co.,*
    739 F.3d 1083 (7th Cir. 2014) .............................................................. 23

*Piotrowski v. Wells Fargo Bank, NA*,
2015 U.S. Dist. LEXIS 98688 (D. Md. July 29, 2015) ..................................... 16

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
646 F.3d 347 (6th Cir. 2011) ........................................................................ 16, 17

*Riffle v. Convergent Outsourcing, Inc.*,
311 F.R.D. 677 (M.D. Fla. 2015) ........................................................................ 16

*Romig v. Pella Corp.*,
2016 U.S. Dist. LEXIS 72437
(D.S.C. June 3, 2016) ........................................................................................... 23

*Rycroft v. Gaddy*,
281 S.C. 119, 314 S.E.2d 39 (1984) .................................................................... 15

*Shelton v. Pargo, Inc.*,
582 F.2d 1298 (4th Cir. 1978) ............................................................................. 12

*Snakenberg v. Hartford Cas. Ins. Co.*,
299 S.C. 164, 383 S.E.2d 2 (1989) ...................................................................... 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 136 S. Ct. 1540 (2016) ................................................................. 20

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
303 U.S. 283 (1938) ............................................................................................. 35

*Stillmock v. Weis Markets, Inc.*,
385 F. Appx 267 (4th Cir. 2010) ......................................................................... 13

*Stokes-Craven Holding Corp. v. McKenzie*,
416 S.C. 517, 787 S.E.2d 485 (2016) ................................................................. 30

*Stuart v. Glob. Tel *Link*,
956 F.3d 555 (8th Cir. 2020) ............................................................................... 23

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) ............................................................................... 13

*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ............................................................................. 17

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ......................................................................................... 19

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
*Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
  602 F.3d 1087 (9th Cir. 2010) ............................................................. 35

*Valley Forge Christian Coll. v.*
*Americans United for Separation of Church & State*,
  454 U.S. 464 (1982) .......................................................................... 20

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ......................................................... 35

*Vernonia Sch. Dist. 47J v. Acton*,
  515 U.S. 646 (1995) .......................................................................... 31

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................ 11, 12

*Wheeler v. Anchor Cont'l, Inc.*,
  80 F.R.D. 93 (D.S.C. 1978) ............................................................... 12

## Statutes

28 U.S.C. § 1291 ...................................................................................... 3
28 U.S.C. § 1332 ............................................................................. 3, 4, 35
S.C. Code Ann. § 15-3-530 (2005) ........................................................ 30
S.C. Code Ann. § 15-3-535 (2005) ........................................................ 30

## Rules

Fed. R. Civ. P. 12 ................................................................................. 34
Fed. R. Civ. P. 23 ..........................................................................*passim*
Fed. R. Civ. P. 59 ................................................................................... 8

## Other Authorities

1 Rubenstein, Newberg on Class Actions § 3: 6.....................................17

7A Wright & Miller, Fed. Prac. & Proc. § 1760 & n.14.55 ....................17

Herr, Annotated Manual for Complex Litig. § 21.222 ............................17

Black's Law Dictionary
   (10th ed. 2014) ................................................................................... 20

Random House Dictionary of the English Language 305 (1967) ........................... 20

Webster's Third New International Dictionary 472 (1971) .................................... 20

## **INTRODUCTION**

This case, brought as a putative class action, involves the design of Bishop England High School in Charleston, South Carolina. The building was constructed in the mid-1990s, and the school opened to students at the new campus for the 1998-1999 school year. The building was designed by professional architects with locker rooms and adjacent coaches' offices in the gym area of the school. The coaches' offices had large plate glass windows overlooking the changing areas of the locker rooms that allowed adult supervision of students in the locker rooms. The windows were obvious to the students, as was the fact that a coach's office was on the other side. The record before the district court established that the design feature is routine and widespread in school facilities and complied with best architectural practices and the applicable standard of care for school design at the time Bishop England was constructed. Likewise, the record before the district court (and common sense) established that in a school setting, adults should supervise the students.[1] Further, the record reflects that none of the Appellants could provide any evidence that they, or in Nestler's case, his child, had been actually spied upon, photographed, or videoed while changing clothes in the locker room. There was no evidence before the district court of any other illicit observation of Viewed Male, Viewed Female, or Nestler's daughter in the locker rooms at the school.

---

[1] The evidence before the district court likewise established that the shower areas and bathroom facilities were not viewable from the coaches' offices.

In considering Appellants' motion for class certification, the district court conducted the rigorous analysis of each factor established by Fed. R. Civ. P. 23(a) and 23(b)(3).  Following that analysis and having applied South Carolina law to the putative class claims, the district court acted within its proper discretion in denying class certification.

Likewise, the district court's findings of fact and conclusions of law regarding Appellees' motion for summary judgment are supported by the record.

Additionally, the record before the district court supports alternate sustaining grounds for both denial of class certification and for summary judgment insofar as the Appellees adduced evidence establishing that the challenged locker room facilities were designed by professional architects when the high school was constructed between 1996 and 1998 and that the design complied with the applicable standard of care in every respect.  Because the undisputed evidence demonstrates the building design complied with the applicable standard of care, summary judgment in the Appellees' favor was warranted.

The district court's judgments denying class certification and granting summary judgment to Appellees must be affirmed.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction of this case pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act ("CAFA").  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**1.      Pursuant to South Carolina law, the tort of invasion upon private affairs requires proof of: an intentional intrusion that is substantial and unreasonable into that which is private.  Where there is no evidence of public disclosure, a party must further establish a blatant and shocking disregard for his or her rights <u>and</u> serious mental or physical injury or humiliation resulting from the intrusion into his or her private affairs.  Can a party establish the elements of the tort in the context of a high school locker room without any evidence of an actual blatant and shocking invasion of his or her personal legally protected interest beyond that which is purely conjectural?**

**2.      Can a party satisfy the elements required for class certification pursuant to Fed. R. Civ. P. 23 where he or she cannot establish he or she suffered a legally cognizable injury in fact and where the proposed class cannot be ascertained?**

**3.      Is summary judgment appropriate where a party cannot establish beyond pure conjecture of what "could have happened" without showing he or she suffered an injury in fact?**

## STATEMENT OF THE CASE

Appellants filed claims regarding possible improper use of security windows in three coaches' offices at Bishop England High School in the Court of Common Pleas for Berkeley County, South Carolina on February 3, 2021. The Appellees removed the case to the District of South Carolina pursuant to the provisions of the Class Action Fairness Act and invoked the district court's original jurisdiction pursuant to 28 U.S.C. § 1332(d).[2] No party challenged the removal or the district court's exercise of subject matter jurisdiction pursuant to CAFA. Appellants did not seek remand.

In their putative class action complaint[3], Appellants asserted causes of action on behalf of two distinct groups – the representative plaintiffs, "Viewed Male 200" and "Viewed Female 300," and the "VIEWED CLASS," defined in the Amended Complaint as:

> students who during the relevant time period as set forth above were required by Defendants to robe and/or disrobe *in the view* of third parties  (J.A. 73, ⸿ 59) (emphasis added)

and Gary Nestler as representative of the "TUITION CLASS," consisting of

> all persons who paid tuition for BEHS student(s) – male or female – who at any time have been subjected to the use of BEHS's dressing rooms / locker rooms to undress and/or dress, shower, or for any other activity that would cause the student to be partially or fully nude, exposed to the viewing windows., [sic] Defendants' representatives or

---

[2] J.A. 19.

[3] J.A. 60.

others, *for photographing, recording, viewing, or otherwise intruded upon, subjected to, and exposed to* people, employees of any Defendant, coaches, athletic officials or other agents, employees, servants, and invitees or permittees of the Defendants, or other persons . . . . (J.A. 73, ‖ 58.) (emphasis added)

The VIEWED CLASS asserted claims against all Appellees for wrongful intrusion into private affairs, negligent hiring, supervision, and training, and negligence. The TUITION CLASS asserted claims for negligence, unjust enrichment, breach of warranty, and negligent hiring, retention and supervision.[4]   Throughout the Amended Complaint, Appellants specifically allege the individual plaintiffs (and the members of the putative class of similarly situated individuals) as having been actually and illicitly observed while changing clothes in the school locker rooms:

58.   . . .the student to be partially or fully nude, exposed to the viewing windows.,[sic] Defendant's representatives or others, for photographing, recording, viewing, or otherwise intruded upon, subjected to, and exposed to people, employees of any Defendant, coaches, athletic officials or other agents, employees, servants, and invitees or permittees of the Defendants or other persons . . . .

59.   Also, Plaintiffs seek a second class made up of students who during the relevant time period as set forth above were required by Defendants to robe and/or disrobe in the view of third parties . . . .

63(i).  Whether the viewing activities of agents, employees, servants of the Defendants, observation, viewing, or watching of the students was intentional by Defendants, was done willingly . . . .

63(j). Whether Scofield or other coaches, athletic officials or other agents, employees, and/or servants, invitees and/or permittees and/or

---

[4] At class certification stage, Appellants withdrew the negligent supervision claim as not susceptible to class-wide treatment. J.A. 1468.

others subject to the Diocese Defendants' control or right to control, observation, viewing, or watching of the students was enabled by their employment by the Defendants or the placing of windows and requiring student use of dressing/locker room facilities for their intended and usual purpose.

70. Adult coaches, athletic officials, and other agents, employees, and/or servants of the Defendants and even strangers had routine, unfettered view of students in a locker room . . . .

71. The intrusion into the VIEWED CLASS' privacy was substantial and unreasonable . . . .

72. The intrusion into the VIEWED CLASS' privacy was also intentional, as the windows were intentionally designed and installed in three athletic offices to view into the various boys and girls dressing/locker rooms for the specific purpose of intruding upon the VIEWED CLASS' seclusion and dignity. Moreover the Defendants knew or should have known that, knew [sic] many persons associated with the Catholic Church had viewed and abused minor children . . . .

81. . . . adult athletic officials or their other agents, employees, and/or servants and others would have unfettered, open, and intrusive view of the students while they engaged in private activities such as dressing, undressing, being nude, disrobing, showering, and drying, and an opportunity for actors and perpetrators to derive sexual pleasure from such observation and recorded material . . . .

86. Defendants failed to take adequate steps to prevent students from being viewed from the viewing area.

97. By viewing students, using photography, video, and/or audio recording equipment in or near the changing room, as well as by actually recording students . . . .

102. All students were required to dress and undress in front of plate glass windows in the view of various BEHS faculty and staff members and others . . . .

110. The Defendants knew or should have known that Scofield engaged in improper . . . conduct including, but not limited to, photographing, and or videotaping students . . . .

115. At all relevant times, Defendants directed, allowed, and/or encouraged adult athletic officials or others . . . to observe, watch, monitor, spy, or otherwise view the VIEWED CLASS members in the subject locker rooms (male and female).

117. . . . agents or employees . . .invaded the privacy of the students by observing, watching, spying, or otherwise viewing them . . . .

118. Defendants' employees . . . invaded the privacy of students by doing these things and by viewing, photographing, videotaping, recording, and/or otherwise sexually exploiting the VIEWED CLASS while they were in the locker rooms . . .

On December 13, 2021, Appellants moved for certification of the following

classes as to all claims and causes of action:

*Viewed class* – all those persons, or such persons' personal representatives, heirs or assigns wherever located, who have or in the future may have any claim against Defendants The Bishop of Charleston, a Corporation Sole, Bishop England High School, Tortfeasors 1-10, the Bishop of the Diocese of Charleston in his official capacity, and Robert Guglielmone, individually, arising out of, based upon, or in any way related to, or involving injuries or damages claimed as a result of Jeffrey Scofield or any other Bishop England High School employee or agent monitoring, watching, viewing, spying, prying, besetting, photographing or videotaping them, or other such similar type conduct, through the viewing windows of the coaches' or other BEHS officials' offices into the locker rooms while attending Bishop England High School from 1998 through 2019.

*Tuition class* – all those persons, or such persons' personal representatives, heirs or assigns wherever located, who have or in the future may have any claim against Defendants The Bishop of Charleston, a Corporation Sole, Bishop England High School, Tortfeasors 1-10, the Bishop of the Diocese of Charleston in his official

capacity, and Robert Guglielmone, individually, arising out of, based upon, or in any way related to, or involving claims for reimbursement of tuition paid to Defendants as a result of Jeffrey Scofield or any other Bishop England High School employee or agent monitoring, watching, viewing, spying, prying, besetting, photographing or videotaping them, or other such similar type conduct, through the viewing windows of the coaches' or other BEHS officials' offices into the locker rooms while attending Bishop England High School from 1998 through 2019.[5]

Appellees opposed certification on the basis that Appellants could not establish any of the requirements for certification pursuant to Rule 23(a) or Rule 23(b)(3).[6] Appellees challenged the proposed classes as being impermissible fail-safe classes that were not ascertainable. Additionally, because none of the Appellants adduced evidence to support *any* claim or cause of action alleged, Appellees directly challenged their adequacy as class representatives, the numerosity of the class, and the individual inquiry that would be required to determine who was, and was not, a class member. Finally, Appellees asserted that Appellants had not established either requirement of Rule 23(b) – predominance or superiority, and, on that basis, the district court should not certify either class.

The district court conducted the requisite thorough analysis and denied class certification on March 22, 2022.[7] The district court denied Appellants' Rule 59(e) motion on May 24, 2022.[8] Contrary to Appellants' contention, Appellants *did not*

---

[5] J.A. 136-137.
[6] J.A. 1335.
[7] J.A. 1471.
[8] J.A. 1570.

file a timely petition for interlocutory review of the district court's ruling on class certification. Appellants failed to file a Rule 23(f) petition within fourteen days of the district court's denial of class certification, instead waiting until after the district court ruled on their motion to reconsider. The filing in this Court was untimely.[9]

Following denial of Appellants' motion to certify, Appellees moved for summary judgment as to all individual claims by Appellants.[10] The Appellees asserted that Appellants could not establish the essential elements of their claims. In particular, they could not adduce evidence of any legally cognizable injury or compensable damage – and, on that basis, all claims should be dismissed. The district court agreed and granted summary judgment on June 17, 2022.[11]

## SUMMARY OF THE ARGUMENT

The district court properly followed Supreme Court and Fourth Circuit precedent in denying class certification. Appellants failed to establish their compliance with Fed. R. Civ. P. 23(a) insofar as: the proposed classes were not ascertainable; the proposed classes constituted impermissible fail-safe classes; the putative class representatives could not establish their own membership in the classes they sought to represent; the putative class representatives failed to establish

---

[9] Fed. R. Civ. P. 23(f); *Nutraceutical Corp. v. Lambert*, 139 S.Ct. 710, 203 L.Ed.2d 43 (2019).

[10] J.A. 1491.

[11] J.A. 1654.

a reliable class-wide method of calculating damages. Additionally, the putative class representatives failed to establish either predominance of common issues or superiority of proceeding as a class action, and thus failed to establish the elements required by Fed. R. Civ. P. 23(b)(3). Given the complete failure of proof regarding compliance with Rule 23(a) or Rule 23(b)(3), the district court did not abuse its discretion in denying class certification. The district court's ruling should be affirmed in every respect.

The district court properly granted summary judgment in favor of the Appellees and against Appellants. The record reflects no proof that Appellants suffered any concrete and particularized legally cognizable injury-in-fact. Because there was no admissible evidence supporting the requisite elements of Appellants' claims, there remained no genuine issue of material fact and the Appellees are entitled to judgment as a matter of law. The district court's ruling granting summary judgment on all claims and causes of action should be affirmed.

## **ARGUMENT**

Denial of class certification and entry of summary judgment should be affirmed in every respect. The district court correctly determined Appellants failed to establish any injury-in-fact and, on that basis, class certification was impossible, there was no genuine issue of material fact regarding any of Appellants' claims, and the Appellees were entitled to judgment as a matter of law.

## A. THE DISTRICT COURT PROPERLY DENIED CLASS CERTIFICATION.

### STANDARD FOR CLASS CERTIFICATION

Actual, not presumed, conformance with Rule 23 is indispensable, and the district court was required to, and did, conduct a rigorous analysis of the moving parties' claims that necessarily entailed some analysis of the merits of the underlying claims.[12]  A court is required to consider as much of the merits as may be necessary to determine whether a putative class of plaintiffs meets the certification requirements of Rule 23.[13]  In short, the district court <u>may not</u> take the allegations made in support of class certification as true.  In *Wal-Mart*, the Supreme Court of the United States expressly rejected that approach.[14]

The Supreme Court has made abundantly clear that Rule 23 does not set forth a mere pleading standard to be given deference.  Rather, a party seeking class certification must do more than merely plead compliance with Rule 23.  The party seeking class certification must present <u>admissible evidence</u> and affirmatively *<u>prove</u>*

---

[12] *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011)*; EQT Prod. Co. v. Adair*, 764 F.3d 347, 362 (4th Cir. 2014) *quoting Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 160 (1982).

[13] *Comcast v. Behrend*, 133 S.Ct. 1426, 1433 (2013). "A district court must definitively determine that the requirements of Rule 23 have been satisfied, even if that determination requires the court to resolve an important merits issue." *EQT Prod. Co.*, 764 F.3d at 361.

[14] *Wal-Mart*, 131 S.Ct. at 2552; s*ee also EQT Prod. Co.*, 764 F.3d at 357.

each required element of class certification.[15]  The proposed class representatives cannot satisfy this burden with conclusory allegations or boiler plate memoranda laden with self-serving conclusions.[16]  It is well-settled that a class representative must be part of the class and must possess the same injury as the class members.[17]

To succeed on a request for certification, the party seeking certification must *prove* by a preponderance of evidence that they have complied with the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation.  Only if the moving party has proven each element of Rule 23(a) may the court turn to Rule 23(b)(3)'s more onerous requirements that the party also must *prove*: that common issues predominate over individual issues.[18]  As the Supreme Court has emphasized repeatedly, especially with *Wal-Mart* and *Comcast*, the requirements set forth in Rule 23(a) and 23(b)(3) afford procedural safeguards in requiring the courts to take a "close look" at whether common questions predominate over individual ones.[19]  The basic gist of *Comcast* is this: the Supreme Court meant what it said in *Wal-Mart* about lower courts habitually applying Rule 23 too broadly and that class actions are meant to be the exception, **not the rule.**  The Supreme

---

[15] *Wal-Mart Stores, Inc. v. Dukes*, *supra*; *EQT Prod. Co., supra*.

[16] *Wheeler v. Anchor Cont'l, Inc.*, 80 F.R.D. 93, 96 (D.S.C. 1978) *quoting Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312 (4th Cir. 1978).

[17] *Falcon*, 457 U.S. at 156-57.

[18] *See Comcast*, 133 S.Ct. at 1432 and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-624 (1997).

[19] *Comcast*, 133 S.Ct. at 1432.

Court also held that class certification should be reserved for **rare** "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[20]  The Supreme Court has thus made it crystal clear that each element of Rule 23(a) and 23(b) must be proved by a preponderance of the evidence and that the courts must analyze those claims and that evidence rigorously.

Additionally, even if plaintiffs can meet the threshold burden of Rule 23(a), they still must satisfy the stringent requirements of Rule 23(b)(3) that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) that class treatment is superior to other available methods for the fair and efficient adjudication of the controversy.[21]  The predominance requirement is more stringent than the commonality requirement of Rule 23(a).[22]  Rule 23(b)(3)'s predominance requires that Appellants establish that their proposed classes are sufficiently cohesive to warrant adjudication by representation.[23]  The proponent of class certification also must establish that the class device is superior to other available methods of adjudicating the controversy.[24]

---

[20] *Id.* at 1432.

[21] Fed. R. Civ. P. 23(b)(3); *Gariety v. Grant Thornton LLP*, 368 F.3d 356, 362 (4th Cir. 2004).

[22] *Thorn v. Jefferson Pilot Life Ins. Co*., 445 F.3d 311, 319 (4th Cir. 2006).

[23] *EQT Prod. Co.*, 764 F.3d at 358; *Gariety*, 368 F.3d at 362 *quoting Amchem*, 521 U.S. at 623-24 (1997).

[24] Fed. R. Civ. P. 23(b)(3); *see also Stillmock v. Weis Markets, Inc.,* 385 Fed Appx. 267, 274 (4th Cir. 2010).  *See also Castaño v. Amer. Tobacco Co.,* 84 F.3d 734, 748 (5th Cir. 1996).

Class certification may be precluded where there are individual questions as to elements of a claim or a defense.[25]  In addition, individual proof of liability or individual proof of damages, where essential to liability, may defeat predominance.[26]

The district court correctly concluded that Appellants failed to establish the requirements of Rule 23 in every respect.  Appellants sought class certification regarding all causes of action –  for negligence, breach of warranty (Nestler only), unjust enrichment (Nestler only), and negligent hiring and supervision (abandoned during briefing), as well as for wrongful intrusion into private affairs – though Appellants only briefed class certification with respect to the wrongful intrusion claim.[27]

The district court denied class certification because:  first, Appellants' proposed classes were not ascertainable by any objective criteria and Appellants proposed impermissible fail-safe classes; second, Appellants had not shown they were harmed in any way, and, without any cognizable legal injury, Appellants did not have standing and would not have been in the classes they sought to represent; third, Appellants failed to establish compliance with either Rule 23(b)(3) factor.[28]

---

[25] *Gariety*, 368 F.3d at 362-63; *Gunnells v. Healthplan Servs. Inc.*, 348 F.3d 417, 434 (4th Cir. 2003).

[26] *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342-43 (4th Cir. 1998).

[27] *See* J.A. 1477-1478 n.2.

[28] As the district court noted, Appellants did not even address Rule 23(b)(3)'s superiority requirement, much less establish this required element.  J.A. 1488-1489.

Having failed to satisfy their burden of showing compliance with both Rule 23(a) and Rule 23(b)(3), no class could be certified.[29]

> **1.    Having determined Appellants could not establish they suffered a legally cognizable injury-in-fact, the district court correctly denied class certification because the proposed classes were impermissible fail-safe classes that could not comply with Fed. R. Civ. P. 23.**

The district court ruled that in an action under South Carolina law for damages resulting from invasion of privacy or wrongful intrusion into private affairs, plaintiffs must show there was an intentional intrusion into that which was private that was substantial and unreasonable enough to be legally cognizable.[30]  Where there is no evidence of public disclosure, the plaintiff must further establish there was a blatant and shocking disregard of plaintiffs' rights and serious mental injury as the result thereof.[31]  As the district court determined, South Carolina law explicitly requires information to be acquired by the defendant, and that Appellants and each member of the class would be required to show they individually suffered a wrongful exposure resulting from an intrusion.

The district court's order denying class certification reflects a thorough analysis of the factors to be considered under Fed. R. Civ. P. 23.  The district court's

---

[29] J.A. pp. 1469-1492.

[30] *See Snakenberg v. Hartford Casualty Ins. Co.*, 299 S.C. 164, 171-2, 383 S.E.2d 2, 12-13 (Ct. App. 1989); *citing Meetze v. Associated Press*, 230 S.C. 330, 95 S.E.2d 606 (1956) *and Rycroft v. Gaddy*, 281 S.C. 119, 314 S.E.2d 39 (Ct. App. 1984).

[31] *O'Shea v. Lesser*, 308 S.C. 10, 17-18, 416 S.E.2d 629, 633 (1992) *citing Rycroft v. Gaddy, supra.*

finding that Appellants had not provided the court with objective criteria by which the court could identify the members of the class was determinative and dispositive. As the Fourth Circuit has held: "however phrased, the requirement is the same. A class cannot be certified unless a court can readily identify the class members in reference to objective criteria."[32] The district court correctly ruled that Appellants' proposed classes failed to satisfy the Rule 23 requirements because it was impossible to identify class members without an individualized inquiry.[33] The district court correctly ruled that Appellants failed to satisfy their burden of establishing ascertainability of the class.[34]

As the district court found – Appellants' proposed classes constituted "fail-safe" classes. Fail-safe classes are improper because, either the class members win, in which case they are entitled to relief, or by virtue of losing, they are not in the class at all and, therefore, are not bound by any judgment.[35] An impermissible fail-

---

[32] *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 645 (4th Cir. 2019) *EQT Prod. Co.*, 764 F.3d 347, 358. *See also*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-94 (3d Cir. 2012); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 44-45 (2d Cir. 2006).

[33] *See Marcus*, 687 F.3d at 593; *see also Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 579-80 (1st Cir. 1986).

[34] *See, e.g.*, *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 681 (M.D. Fla. 2015); *Piotrowski v. Wells Fargo Bank, N.A.* 2015 U.S. Dist. LEXIS 98688, *20 (D. Md. July 29, 2015) (denying certification where "Plaintiffs have provided no evidence that a class could be ascertained.").

[35] *Bigelow v. Syneos Health, LLC*, 2020 U.S. Dist. LEXIS 155791, *10-12 (E.D.N.C. August 27, 2020) *citing Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347,

safe class is one that is defined so that whether a person qualifies as a class member depends on whether the person has a valid claim on the merits.[36] Nearly every circuit court of appeals that has addressed the issue has held that fail-safe classes are improper.[37] The district court correctly determined the class definition in this case turned entirely on whether each class member has a valid claim.[38] "Plaintiffs' proposed classes will not be defined 'until the case is resolved on the merits because only if a putative class member can show he, she, or her child was viewed in the locker rooms will that individual be known to be part of one of the putative classes."[39]

---

352 (6th Cir. 2011) and summarizing authority regarding the impermissibility of fail-safe classes.

[36] *Bais Yaakov of Spring Valley v. ACT, Inc.*, 328 F.R.D. 6, 13 (D. Mass. 2018).

[37] *Bigelow v. Syneos Health*, at *11. *See, e.g., Orduno v. Pietrzak*, 932 F.3d 710, 716-17 (8th Cir. 2019); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276-77 (11th Cir. 2019); *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799-800 (7th Cir. 2017); *Torres v. Mercer Canyons. Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 & n.19 (1st Cir. 2015); *Byrd v. Aaron's. Inc.*, 784 F.3d 154, 167 (3d Cir. 2015); *Randleman*, 646 F.3d 347, 352 (6th Cir. 2011); In *Bigelow,* the district court also noted that, "numerous treatises discuss the impermissibility of fail-safe classes. *See, e.g.,* 7A Wright & Miller, Fed. Prac. & Proc. § 1760 & n.14.55 (discussing how the Third Circuit and "[o]ther courts... have ruled that requiring fail-safe classes for certification is improper"); Herr, Annotated Manual for Complex Litig. § 21.222 ("The order defining the class should avoid ... terms that depend on resolution of the merits."); 1 Rubenstein, Newberg on Class Actions § 3: 6 ("Class definitions that require a court to decide the merits of prospective individual class members' claims to determine class membership— sometimes referred to as 'fail-safe' classes—may also run afoul of the definiteness requirement.").

[38] *Bigelow*, at *12-13.

[39] Order denying class certification, J.A. 1479 (internal citations omitted).

Additionally, class definitions that are too vague, too broad, or too subjective (as were the classes proposed by Appellants here) cannot satisfy the ascertainability requirement for certification.[40] Where there are no objective boundaries to the proposed classes, then Appellants cannot meet the ascertainability requirement.[41] The proposed class of those who "have or in the future may have claims against" the Appellees would seem to include so many variations that ascertainability is impossible – those students from other schools who used the locker rooms; those students who went in the locker room and were well aware that coaches' offices were just outside; those students who knew the coaches were charged with monitoring the locker rooms and simply did not care; those students who did care and did not change clothes in the locker area; those who showered and changed in the shower area; those students who used the restrooms, but did not change clothes in the locker area; and so on. The same holds true for the tuition class. Appellants' incredibly broad definition did not meet the ascertainability test under Rule 23.

As the district court also noted in its order, Appellants did not submit briefing regarding class certification and the claims for negligence, breach of warranty, and unjust enrichment, and they abandoned the negligent hiring claim after the Appellees

---

[40] *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015)

[41] *Brecher v. Republic of Argentina*, 802 F.3d 303, 305 (2d Cir. 2015) (the use of objective criteria cannot alone determine ascertainability when those criteria, taken together, do not establish the definite boundaries of a readily identifiable class).

pointed out the impossibility of certifying that claim because of the vast number of impermissible individual inquiries the claim would require.[42]  As the district court noted, the class members would not succeed in asserting a negligence claim without proof he or she was actually harmed.  For the same reasons, the district court identified the impossibility of Appellants' unjust enrichment and breach of warranty claims – both required each member of the class to show an injury-in-fact.

Having correctly determined that Appellants failed to define classes that were ascertainable in any form or fashion, the district court did not abuse its discretion in rejecting them as impermissible fail-safe classes.  The district court's judgment should be affirmed.

> ## 2.  The district court correctly determined Appellants failed to establish they had standing to sue – thus, Appellants were not even members of the classes they purported to represent, and the classes could not be certified.

The district court held that Appellants failed to establish an injury-in-fact for they could not prove a concrete harm.[43]  To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or

---

[42] J.A. 1477 – 1478 n.2.

[43] *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2206 (2021).  In the majority opinion, Justice Kavanaugh quoted then-Judge Barrett, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions" *quoting Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 332 (7th Cir. 2019).

hypothetical."[44] "A 'concrete' injury must be "*de facto*"; that is, it must actually exist.[45] The adjective "concrete," is meant to convey the usual meaning of the term — "real," and not "abstract."[46] Concreteness, therefore, is quite different from particularization."[47] For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."[48] Standing requires that plaintiff has personally suffered some actual injury.[49] Particularization is necessary to establish injury-in-fact, but it is not sufficient. An injury in fact must also be "concrete."

Thus, as the district court ruled, there is no basis for recovery for "but, I could have been killed," or "I am afraid I might have been photographed."  In short, the district court correctly rejected Appellants' claims because they were entirely grounded in "what might have happened" or "what could have happened" as opposed to what did happen.  The district court quoted Appellants' psychiatrist-expert in saying "the situation was like driving across a bridge that later collapses and you realize you could have been killed, though you were not."  The district court

---

[44] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[45] *See* Black's Law Dictionary 506 (10th ed. 2014).

[46] Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967).

[47] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S.Ct. 1540, 1548 (2016).

[48] *Spokeo*, 578 U.S. at 339, *quoting Lujan*, 504 U.S. at 560 n.1.

[49] *Id., see also*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, ("'plaintiff must allege personal injury'"); *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "'personally has suffered some actual or threatened injury'").

went on, citing the psychiatrist that "the possibility that the student-plaintiffs could have been photographed, even though they were not, still impacts them, though she conceded that every student would react differently.[50]

In short, the district court correctly concluded that Appellants had suffered no cognizable legal injury because they could not establish they had been illicitly observed changing clothes in the locker rooms and, for that reason, could not establish they any of the Rule 23(a) requirements for class certification.

The district court should be affirmed.

### 3. The record before the district court reflects Appellants failed to establish a reliable method of calculating class-wide damages; thus, denial of certification was warranted and correct.

Appellants were required to demonstrate "through evidentiary proof" that their "damages are capable of measurement on a class-wide basis."[51]  Without that, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."[52]  "Mere assurance" that a reliable methodology exists is "insufficient[.]"[53]  In Appellants' motions, no class-wide means of measuring damages was offered—much less supported through evidentiary proof.

---

[50] *Amanda Salas deposition*, 82:11 – 84:18, J.A. 1370 – 1372.
[51] *Comcast*, 133 S.Ct. at 1432-33; *see also Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 202-03 (D.N.J. 2013) ("[A] plaintiff seeking class certification must present evidence of a reliable methodology for calculating damages on a class-wide basis.").
[52] *Comcast*, 133 S.Ct. at 1433.
[53] *Bright*, 292 F.R.D. at 202-03.

Rather, as the district court noted, the psychologist retained by Appellants testified that, while each student may be affected in some way by the revelation that Jeffrey Scofield photographed five boys in 2019, each student would be affected differently.[54]  Appellants merely recited the elements of each claim – including resulting damage from whatever wrong they alleged.  Appellants were silent on how those damages can be calculated generally.[55]  Because Appellants failed to present a reliable class-wide model for damages, the district court properly denied class certification for that reason alone.

4. **The district court correctly denied class certification where Appellants failed to establish either of the stringent Rule 23(b)(3) requirements of predominance and superiority.**

Appellants have adduced no admissible evidence that they have satisfied their heavy burden to establish the Rule 23(b)(3) elements of predominance and superiority as to each of their claims.  Neither the student–plaintiffs nor Nestler satisfied their heavy burden of establishing that their claims were in any way amenable to class-wide, common proof.[56]  The predominance inquiry required the district court to examine the parties' claims and defenses and their elements and then

---

[54] *Salas deposition*, 67: 20 – 68: 10; 76: 15 – 77: 5; 78:23 – 79: 5 J.A. 1364 – 1369.
[55] *See, e.g.*, *Bright*, 292 F.R.D. at 202-03 (denying class certification because, among other defects, plaintiff "provided no model for calculating actual damages on a class-wide basis").
[56] *EQT Prod. Co.*, 764 F.3d at 366; *also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016).

determine whether those elements require common or individualized proof.[57]   The
inquiry is qualitative and not quantitative and focused on the issues that will likely
dominate at trial.[58]   Courts must analyze and take into account  affirmative defenses
and whether there are claimant-specific defenses (the statute of limitations,
knowledge, lack of reliance, lack of causation for example) may predominate over
common ones.[59]

> **a)  Appellants failed to establish the required element of
> predominance, and the district court did not abuse its
> discretion in denying class certification.**

Rule 23(b)(3)'s predominance requirement mandates that a party seeking
class certification show how they would prove causation and damages with common
proof. As the district court concluded, Appellants failed in every respect.[60]   There
was simply no class-wide proof that all parents and tuition-payers suffered a
common injury due to the conduct of the Appellees.  Likewise, there was no class-
wide proof that all students were harmed in the same manner solely because an adult
could monitor the locker rooms at the high school for misconduct.

---

[57] *See Brown*, 817 F.3d at 1234.  *Cited with approval Naparella v. Pella Corp.*, 2016
U.S. Dist. LEXIS 72442, at *39-41 (D.S.C. June 3, 2016) (Norton, J.) *and Romig v.
Pella Corp.*, 2016 U.S. Dist. LEXIS 72437 (D.S.C. June 3, 2016) (Norton, J.).
[58] *See, e.g., Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014); *Harnish v.
Widener Univ. Sch. of Law*, 833 F.3d 298, 304-05 (3d Cir. 2016).
[59] *Stuart v. Global Tel *Link*, 956 F.3d 555 (8th Cir. 2020); *Cruson v. Jackson Nat'l
Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020).  *See also Gariety*, 368 F.3d at 362 (Proof
of reliance is generally individualized to each plaintiff).
[60] *Comcast v. Behrend*, 569 U.S. 27, 37 (2013).

The district court properly concluded that the putative class members' claims could *only* be proved by individualized evidence and that the Appellees would necessarily present particularized defenses to each claim. That, standing alone, defeated certification.

### **Gary Nestler and the proposed parent class.**

Nestler's daughter attended Bishop England for all of her freshman year and one semester of her sophomore year – between August, 2017, and January, 2019. Nestler asserted Appellees promised him that his daughter would be educated in a safe, nurturing environment when she was still in eighth grade and prior to her enrollment at Bishop England. However, the record before the district court contained no evidence to support any finding that the parents of every aspirant to attend Bishop England received or relied on any such statements, or that either the warranty claim (to the extent such a statement can even be construed as an oral warranty) or unjust enrichment claims could be determined for the entire class with common proof. Rather, as the district court correctly concluded, individualized questions predominated. These included, for example, whether such a statement was made; whether any parent relied exclusively on such a statement; and whether there existed of any sort of oral contract between the school and each parent. Thus, the district court correctly concluded that any common issue would have been overwhelmed by individualized evidence from every single parent who sent a child

to Bishop England over the past 20 years. The highly individualized elements of proof would have been required to establish the essential elements of a breach of warranty claim for each and every member of the proposed class. The district court correctly determined that the individualized inquiry prevented certification of the Tuition Payer Class.[61]

### **The former students and the proposed "viewed" class.**

As with Gary Nestler, the district court correctly found myriad individual issues of fact – the elements of each student-class member's causes of action, and the affirmative defenses applicable to the claims of thousands of students, alumni, and former students – would overwhelm and subsume any class-wide treatment of their claims. As the district court found, the privacy claims alone would depend entirely on individualized evidence and that the putative Viewed Class would be required to show "unique 'shame, humiliation, and emotional distress. . . .'"[62] With that daunting task, the district court ruled Appellants had not established their burden under Rule 23(b)(3) that common proof will establish the required elements of their claims and damages. On that basis denial of class certification was entirely proper and was not an abuse of discretion.

---

[61] As the district court noted in its Order, Appellants abandoned the negligent hiring, retention, and supervision claim in reply to the Appellees' Opposition.

[62] Order, J.A. 1486.

> **b)     Appellants failed to establish the required element of the superiority of the class device, and the district court did not abuse its discretion in denying class certification.**

Rule 23(b)(3) also requires a determination that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.[63] Courts must inquire into four areas to determine superiority:

(a)     The class members' interest in individually controlling the prosecution of separate actions;

(b)     The extent and nature of any litigation concerning the controversy begun by class members;

(c)     The desirability of concentrating the litigation of claims in the particular forum; and

(d)     The likely difficulties in managing a class action.[64]

In particular, the "individual interest" inquiry militated against a finding of superiority. The inquiry turns on the cost of litigating the class members' claims, and the complexity of the issues surrounding those claims. If individual lawsuits are worth enough on their own, then a class action normally will not be superior to individual litigation.[65] As the district court found, individuals who can prove they

---

[63] Fed. R. Civ. P. 23(b)(3).

[64] *Id.*

[65] *See, e.g., Castaño,* 84 F.3d 734, 748 (5th Cir. 1996) (no superiority where individual damage claims are high).

actually were photographed or videotaped and damaged for whom the statute of limitations may not have run should have sufficient individual interest to pursue their own claims. The district court correctly concluded that class treatment would not be superior where all, or nearly all, members of the proposed class have <u>no</u> injury and <u>no</u> damages whatsoever. The district court correctly determined Appellants had not met their burden of establishing the Rule 23(b)(3) requirement that the class device be superior to individual litigation.

A second factor that militated against class treatment was the difficulty of managing numerous mini-trial(s). As noted above regarding predominance – virtually every former student would have had to establish they were injured as a result of some specific conduct by a specific employee of Bishop England dating back to 1998. The court would have had to conduct numerous trials within a trial: were you a student? is your claim time-barred? were you viewed illicitly and without reason? did you suffer mental harm as a result? and innumerable other individualized inquiries. The school would necessarily assert appropriate affirmative defenses to each claim, and each would require its own evidence and testimony. The district court correctly concluded that class treatment of these claims would be entirely unmanageable, and that certification was inappropriate.

5.     **Because Appellants utterly failed to establish *any* Rule 23 requirement, the district court did not abuse its discretion in denying class certification.**

The district court concluded Appellants could not, and did not, prove a single element required for class certification under Fed. R. Civ. P. 23(a).  Rather, their proposed classes constituted impermissible fail-safe classes that were not ascertainable by any objective means.  Appellants likewise failed to establish any class-wide measure of damages.  Having failed to satisfy their burden, the district court did not abuse its discretion in denying class certification.

Additionally, as the district court determined, Appellants failed to present any evidence to establish that the proposed classes satisfy the stringent requirements of Rule 23(b)(3).  There was, quite simply, nothing in the record supporting either predominance or superiority.  Instead, the only evidence in the record demonstrated the proposed classes would create an unwieldy and inefficient quagmire of individualized issues, both regarding the claims of each member of the proposed classes and the various defenses that will be asserted.  In short, neither Rule 23(b)(3) condition was met, and the district court correctly determined Appellants' claims simply could not be treated on a class-wide basis.

Because Appellants completely failed to establish the elements required for certification pursuant to Fed. R. Civ. P. 23, denial of class certification was required

and did not amount to an abuse of discretion.  On that basis, the district court should be affirmed.

## B.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON ALL CAUSES OF ACTION.

The district court granted summary judgment to the Appellees because Appellants had introduced no evidence that they sustained any legally cognizable injury-in-fact.  As noted, neither Male Student nor Female Student could state that anyone, at any time, had illicitly or surreptitiously photographed them changing clothes in the locker room.  Appellants submitted no opposition and proffered no evidence to support their claims for negligence, breach of warranty, unjust enrichment, or negligent hiring and supervision.  Simply based on the failure of proof regarding any legally recognized injury, summary judgment was appropriate.

Additionally, and notwithstanding his complete failure to establish any essential element of any claim he asserted, the Male Student's claims were barred by the applicable statute of limitations.  The record reflects that the Male Student attended Bishop England High School from 2012 until graduating in 2016.[66]  He testified he was aware of the presence of the locker room windows while he was a student and knew the locker room windows were present.  He said he knew the coaches' office was on the other side of the window and that he could tell when the

---

[66] Male Student was born February 15, 1998, and turned 18 on February 15, 2016.

lights were on in the office and when a coach occupied the office.[67] The statutory period of limitations begins to run when a person could or should have known, through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto.[68] The South Carolina Supreme Court has interpreted the "exercise of reasonable diligence" to mean that Male Student was required to "act with some promptness" when on notice of a potential claim.[69] "Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial."[70] It takes very little to start the clock. Objectively, the statute of limitations has run on any claim he might have had relating to the locker rooms.

---

[67] *Male Student Deposition*, J.A. 1392.

[68] *Stokes-Craven Holding Corp. v. McKenzie*, 416 S.C. 517, 525-26, 787 S.E.2d 485, 489-90 (2016) (citations and quotations omitted); *see also* S.C. Code Ann. § 15-3-535 (2005) ("[A]ll actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.").

[69] *Dean v. Ruscon Corp.*, 321 S.C. 360, 363-64, 468 S.E.2d 645, 647 (1996).

[70] *Id.*

**C.    AS ALTERNATE SUSTAINING GROUNDS, THE RECORD REFLECTS THE LOCKER ROOM DESIGN AT BISHOP ENGLAND MET THE STANDARD OF CARE AND CANNOT BE DEEMED A BLATANT AND SHOCKING DISREGARD OF THE STUDENTS' RIGHTS THAT WOULD PERMIT RECOVERY FOR ANY PRESUMED INVASION OF PRIVACY.**

The determination of whether the locker room windows themselves were such a blatant and shocking disregard for the rights of students is a question of law for the court.[71]  "[S]tudents have a less robust expectation of privacy than is afforded the general population," and "this expectation may be even less for student athletes in locker rooms, which the [Supreme] Court has previously observed are places not notable for the privacy they afford."[72] A design feature that is both quite common in high schools and that met the applicable standard of care simply cannot be a legally cognizable intrusion on private affairs under South Carolina law.

The district court's findings were well-supported by the record – the student-plaintiffs both testified they were aware of the coaches' office windows and both testified they only saw the blinds closed.  Neither ever saw an adult leering into the locker room.  As the district court ruled, Gary Nestler adduced no evidence that his daughter was ever spied on, photographed or videotaped while in the locker room. Without any evidence of any legally cognizable injuries-in-fact, summary judgment was appropriate and the district court's judgment should be affirmed.

---

[71] *Meetze v. Associated Press*, *supra*.

[72] *Brannum v. Overton County Sch. Bd.*, 516 F.3d at 496, *quoting Veronia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995).

Additionally, the record before the district court reflects the Appellees' direct challenge to Appellants' speculative claims because the design feature of a coaches' office with a window into the locker room space is quite common, and in some states like Virginia, is required. The record before the district court reflected the clear opinions of Appellees' expert witnesses, Myles Glick (architect)[73] and Lee Runyon (requirements of school construction)[74] that having windows looking in the locker room was entirely consistent with the standard of care for the construction of schools at the time Bishop England was designed and constructed.

> Surveillance of the locker room and the installation of security windows in the coaches or PE teacher's office (Rooms #C121, C144, and C149), are "standard of care for architects and school districts. As architects, student safety and security are a priority. View windows provide the necessary security/supervision for locker rooms in high schools in the Low Country and across the United States. The design and installation of the view windows at Bishop England High School, as shown on the architect's plans dated October 26, 1996, meets the standard of care within a high degree of architectural certainty.[75]

> Lee Runyon opined:

> Given the information I have independently reviewed, it is my professional conclusion that the locker room areas of Bishop England High School as originally constructed inclusive of internal office spaces with internal windows were in accord with the operational requirements of schools, consistent with best practices for student safety and supervision and in common with numerous other facilities at fellow high schools constructed in the 1990s. The design afforded staff and students the opportunity to be mutually aware of their presence for

---

[73] *Glick Report*, J.A. 1374.

[74] *Runyon Report,* J.A. 1379.

[75] *Glick Report*, J.A. 1377.

supervision and safety.  It afforded the staff the ability to conduct administrative duties and class / team responsibilities while simultaneously supervising students.  It provided students restroom facility in which to conduct hygiene related activities in private stalls not visible from the administrative office.  The school clearly expresses in numerous ways, both written and in action, that student safety and supervision are paramount as evidenced in the Faculty Handbook and written communication for Physical Education Classes distributed by teachers to parents at the start of each academic semester.  It is my professional conclusion that Bishop England High School's Locker Room Facility as originally constructed met all the required needs for student safety, supervision, and educational purposes in accordance with the school's established mission.[76]

Eric Aichele, the architect who designed Bishop England High School, testified that every high school he designed from the 1970s until the last high school he designed, Wando High School in 2004, contained exactly the same design feature.[77]  The architecture firm that designed Bishop England, LS3P, testified that such windows in the locker rooms of schools was very common and were designed for security purposes.[78]  The record reflects that Appellees identified at least fifteen schools in three Charleston-area school districts that have coaches' offices with

---

[76] *Runyon Report*, p. 12-13.
[77] *Aichele deposition*, 38: 2 – 39: 5; 52: 2 – 4; 68: 13 – 14, 19 – 22; 96: 4 - 11; 101: 25 – 102: 13; 115: 24 – 116: 11.  J.A. 1414.  The design drawings make clear that someone in the office could not see the showers, could not see the bathroom areas, and had a very limited view of one of the sinks outside the bathroom area.  *See* LS3P locker room design drawing, J.A. 1335.
[78] *LS3P 30(b)(6) deposition, session 2*, 129: 11 – 20; 136: 8 – 11; 152: 22 – 153: 8; 156: 21 – 22; 161: 25 – 162: 4, J.A. 1438.

windows opening to the locker rooms.[79]

The record reflects the security windows in the locker rooms at Bishop England were designed and constructed in compliance with the applicable standard of care.  There is no admissible evidence in the record that a different standard of care required removal of the windows. The district court's judgment should be affirmed.

## D.   APPELLANTS' SUGGESTION OF REMAND TO STATE COURT FOR FURTHER PROCEEDINGS IS INAPPROPRIATE.

Appellants mischaracterize both the Appellees' opposition to class certification and summary judgment motion as little more than a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) based upon lack of standing.  In so doing, Appellants incorrectly contend their claims can either be dismissed without prejudice, or that the district court should have remanded to state court for further proceedings.

The Appellees contested the essential elements of class certification under Fed. R. Civ. P. 23.  Having prevailed on the issue of class certification, the Appellees asserted there remained no genuine issues of material fact and that they were entitled

---

[79] These are:  CCSD – Burke H.S., North Charleston H.S., Wando H.S., West Ashley H.S., Stall H.S., District 4 Stadium; BCSD – Timberland H.S., Cross H.S., Goose Creek H.S., Cane Bay H.S., Fort Dorchester H.S., Stratford H.S., Hanahan H.S.; DD2 – Summerville H.S., Ashley Ridge H.S., Dubose Middle School, Oakbrook Middle School, River Oaks Middle School.

to judgment as a matter of law.  The district court agreed and dismissed Appellants' claims with prejudice.

At no point did the Appellees challenge the district court's subject matter jurisdiction.  Rather, the Appellees *invoked* the district court's jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d), and established the requisite jurisdictional facts under CAFA.  Appellants never challenged the basis for that removal.  It is well-established in other contexts that jurisdiction is determined at the time of removal and nothing filed after removal affects jurisdiction.[80]  At the time of removal, the class action complaint appeared to plead jurisdictional facts upon which the Appellees removed the case under CAFA.  Every Circuit Court that has considered the matter has determined that the fact that the district court denied certification does not deprive the court of jurisdiction.[81]

---

[80] *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) *citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

[81] *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1305 (11th Cir. 2021) (federal jurisdiction under CAFA does not depend on certification); *F5 Capital v. Pappas*, 856 F.3d 61, 76 (2d Cir. 2017) (jurisdictional facts are assessed at the time of removal, and the fact that the court subsequently determined that the case could not proceed as a class action under CAFA did not deprive it of subject matter jurisdiction); *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 426-27, 429 (5th Cir. 2014) (holding that CAFA jurisdiction is assessed at the time of removal, and that post-removal amendments to the complaint do not defeat jurisdiction); *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010) (federal jurisdiction under CAFA does not depend on certification); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) (jurisdictional facts are assessed at the time of removal," and "post-removal events including non-certification, de-certification, or severance, do not deprive federal

## <u>CONCLUSION</u>

The district court was correct in ruling on Appellants' motion for class certification and, having denied that motion and determined Appellants could not establish the requisite elements of any claim pleaded, the district court correctly ruled on the merits of the claims, granting summary judgment, and dismissing them in their entirety.

TURNER PADGET GRAHAM & LANEY, P.A.

December 7, 2022

s/ Richard S. Dukes, Jr.
Richard S. Dukes, Jr., Federal ID No. 7340
40 Calhoun Street, Suite 200
Charleston, SC 29401
Phone: (843) 576-2810
RDukes@TurnerPadget.com

Carmelo B. Sammataro, Federal ID No. 9174
Post Office Box 1473
Columbia, SC 29202
Phone: (803) 254-2200
Fax: (803) 799-3957
SSammataro@TurnerPadget.com

*Attorneys for Defendants - Appellees*

---

courts of subject matter jurisdiction."; *Metz v. Unizan Bank*, 649 F.3d 492, 500 (6th Cir. 2011) (denial of class certification does not divest federal courts of jurisdiction); *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 n.2 (8th Cir. 2011) (same); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091-92 (9th Cir. 2010) (same); *Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 639, 640 (5th Cir. 2014) (federal jurisdiction is properly exercised over individual cases that were severed from a class action complaint because post-removal events do not oust CAFA jurisdiction).

## **CERTIFICATE OF COMPLIANCE**

1.  This Opening Brief of Appellant has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

2.  Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, this Opening Brief of Appellant contains 9,123 words.

3.  I understand that a material misrepresentation can result in the court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

December 7, 2022               s/ Richard S. Dukes, Jr.
                              Richard S. Dukes, Jr., Federal ID No. 7340