**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1750**

———————

GARY NESTLER, on behalf of themselves and all others similarly situated;
VIEWED STUDENT FEMALE 200, on behalf of themselves and all others similarly
situated; VIEWED STUDENT MALE 300, on behalf of themselves and all others
similarly situated,

       Plaintiffs – Appellants,

   v.

THE BISHOP OF CHARLESTON, a Corporation Sole; BISHOP ENGLAND
HIGH SCHOOL; TORTFEASORS, 1 - 10; THE BISHOP OF THE DIOCESE OF
CHARLESTON, in his official capacity; ROBERT GUGLIELMONE, individually,

       Defendants – Appellees.

———————

Appeal from the United States District Court for the District of South Carolina, at
Charleston.  Richard Mark Gergel, District Judge.  (2:21-cv-00613-RMG)

———————

Argued:  May 4, 2023                       Decided:  July 28, 2023

———————

Before NIEMEYER, AGEE, and RUSHING, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:**  David Kevin Lietz, MILBERG, Washington, D.C., for Appellants.  Richard
Sears Dukes, Jr., TURNER PADGET GRAHAM & LANEY, P.A., Charleston, South
Carolina, for Appellees.  **ON BRIEF:**  Lawrence E. Richter, Jr., RICHTER FIRM, LLC,
Mt. Pleasant, South Carolina; Carl L. Solomon, SOLOMON LAW GROUP, LLC,

Columbia, South Carolina, for Appellant.  Carmelo B. Sammataro, TURNER PADGET GRAHAM & LANEY, P.A., Columbia, South Carolina, for Appellees.

———————————

Unpublished opinions are not binding in this circuit.

PER CURIAM:

After learning that an employee of Bishop England High School ("Bishop High") covertly filmed Bishop High students disrobing through a locker room window, Bishop High students and parents of Bishop High students (collectively the "Students") brought this putative class action. Relevant to this appeal, although the Students did not allege that a Bishop High employee filmed the students or even viewed them through a locker room window, the Students brought a claim for wrongful intrusion into private affairs under South Carolina law, alleging they could state a claim based on the *potential* that they were viewed while partially or completely nude. The district court denied the Students' motion for class certification and granted summary judgment in favor of the defendants. In so doing, it heavily relied on its determination that South Carolina case law permits success on the tort of wrongful intrusion into private affairs only when the plaintiff can show that an *actual* viewing occurred. The Students appeal, arguing that the district court's interpretation of South Carolina law was erroneous.

But we need not decide whether the Students are correct. Instead, we affirm the district court's judgment because the Students failed to demonstrate an injury resulting from the potential viewing—as is required for a claim for wrongful intrusion into private affairs under either parties' interpretation of the "viewing" requirement.

I.

Bishop High is a Catholic high school in Charleston, South Carolina. Students participating in physical education or sporting events at Bishop High disrobed in locker

3

rooms that shared adjoining walls with Bishop High coaching staff offices. Each wall contained a 4' by 4' glass window that made it possible for Bishop High employees, and anyone else with access to the offices, to view students in the locker rooms as they disrobed. In May 2019, it came to light that Bishop High's Director of Sports Information had used a locker room window to surreptitiously film students in the process of disrobing and who had already disrobed.

After learning of that employee's conduct, the Students brought a putative class action in the South Carolina Court of Common Pleas, claiming, *inter alia*, wrongful intrusion into private affairs.[1] They brought their claims against Bishop High; the Bishop of Charleston, a Corporation Sole; and Robert Guglielmone, the Bishop of Charleston, individually and in his official capacity. We refer to these defendants collectively as "the School."

After the School removed this case to federal court pursuant to 28 U.S.C. § 1453(b), the Students moved for class certification of two proposed classes—a "Viewed Class" and a "Tuition Class." J.A. 73. The Viewed Class would be made up of Bishop High students, or their representatives, who were required to disrobe in the locker rooms and who therefore could have been viewed by persons on the other side of the windows. The Tuition Class would consist of all persons who paid tuition for a Bishop High student who was required to use the locker rooms and was thus subject to possible viewing through the

---

[1] The Students brought additional claims but on appeal they did not challenge the district court's treatment of those claims. We do not discuss those additional claims because none of them are before us.

windows. Both classes are limited to students and parents within a twenty-year period who may have claims against the School based on its employees "monitoring, watching, viewing, spying, prying, besetting, photographing or videotaping them, or other such similar type conduct," through the viewing windows of the coaches' offices into the locker rooms. J.A. 136–37.[2]

The School opposed the motion, arguing that the Students could not meet the requirements of class certification. In relevant part, the School asserted that the proposed class members were not ascertainable and were instead "fail-safe" classes because there was no evidence they had actually been viewed. Further, the School contended that the Students lacked standing because, without evidence of actual viewing, they could not show a concrete injury. In response, the Students asserted that the potential for monitoring was sufficient to prove a claim for wrongful intrusion into private affairs under South Carolina law such that evidence of actual viewing was unnecessary. Pressing that interpretation of state law, the Students asserted that they met the requirements for class certification and had suffered a cognizable injury.

The district court denied the Students' motion for class certification. The district court had multiple reasons for that denial but two are particularly relevant on appeal. First, the district court concluded that "South Carolina law explicitly requires that information about the victim be acquired by the defendant for the tort to be actionable," but the Students could not demonstrate that anyone actually viewed them through the locker room windows.

---

[2] The differences between the two classes are not relevant to our resolution of this case.

*Nestler v. Bishop of Charleston*, No. 2:21-cv-613-RMG, 2022 WL 884237, at *5 (D.S.C. Mar. 24, 2022). As a result, the district court determined that the Students could not meet multiple class certification requirements, including ascertainability, and that they lacked standing. Second, the district court explained that the Students failed to address the superiority requirement of class certification.

Thereafter, the School filed a motion for summary judgment, which the district court granted, reasoning that without evidence of actual viewing, the named plaintiffs failed to "establish that they suffered a legally cognizable injury." *Nestler v. Bishop of Charleston*, No. 2:21-cv-613-RMG, 2022 WL 2784879, at *2 (D.S.C. June 17, 2022).

The Students timely appeal from both the denial of class certification and the grant of summary judgment. We have jurisdiction under 28 U.S.C. § 1291.

## II.

We review a district court's class certification decision for abuse of discretion. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). "A district court abuses its discretion when it materially misapplies the requirements of [Federal] Rule [of Civil Procedure] 23." *Id.*

We review the district court's grant of summary judgment de novo. *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 291 (4th Cir. 2021). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

6

A.

The Students' appeal essentially rests on their assertion that the district court applied the wrong legal standard because the South Carolina tort of wrongful intrusion into private affairs does not require an actual viewing to be actionable. Relying on that interpretation, they argue that they meet the prerequisites for class certification and alleged a cognizable injury. But we conclude that even if actual viewing is not necessary to prove a wrongful intrusion into private affairs claim in South Carolina (an issue we do not decide), the Students failed in any event to establish an actionable injury—as is required for success for any tort, including wrongful intrusion into private affairs. *See Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993) ("In reviewing the grant of summary judgment, we can affirm on any legal ground supported by the record and are not limited to the grounds relied on by the district court.").

Wrongful intrusion into private affairs—a subcategory of South Carolina's tort of invasion of the right to privacy—allows recovery if a plaintiff can show: (1) an intentional (2) intrusion (3) into that which is private (4) that is substantial and unreasonable. *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 6 (S.C. Ct. App. 1989). "An intrusion may consist of watching, spying, prying, besetting, overhearing, or other similar conduct." *Id.* "Whether there is an intrusion is to be decided on the facts of each case," but "must concern those aspects of [the plaintiff's person], his home, his family, his personal relationships, and his communications which one normally expects will be free from exposure to the defendant." *Id.* To satisfy the "substantial and unreasonable" element, the

intrusion "must be of a nature that would cause mental injury to a person of ordinary feelings and intelligence in the same circumstances." *Id.*

Importantly, a plaintiff attempting to prove a wrongful intrusion into private affairs claim must show "serious mental or physical injury or humiliation to himself resulting therefrom." *Rycroft v. Gaddy*, 314 S.E.2d 39, 43 (S.C. Ct. App. 1984). Here, the Students have failed to satisfy this mandatory element because the record contains no evidence of a qualifying injury.

At best, the evidence establishes that the named plaintiffs felt some amorphous anxiety after learning of the potential viewing. For example, one of the class representatives stated that when he found out about the potential viewing "it took away a lot of [his] innocence at a young age" and it made him "anxious" that someone may have photographed him. J.A. 1160–61. He also "felt bad" for his fellow students that may have been viewed. J.A. 1149. Similarly, another class representative stated that learning about the potential viewing made her feel "anxious" and caused her to "mistrust a lot more things." J.A. 1202.

Although we do not downplay what is alleged to have occurred, conclusory statements alleging "anxiety"—without more—do not demonstrate the requisite "*serious mental or physical injury or humiliation*" necessary to establish injury. *See Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020) ("And in the context of psychological injuries, alleging 'anxiety' alone appears to fall short of cognizable injury as a matter of general tort law."). To be clear, we are not holding that specifically delineated anxiety can never meet this standard, but for it to do so there must be sufficient cognizable

evidence from which a factfinder could conclude that it does. *See Weeks v. Union Camp Corp.*, 215 F.3d 1323, 2000 WL 727771, at *7 (4th Cir. June 7, 2000) (unpublished table decision) (concluding that conclusory allegations that the defendants caused the plaintiff "distress, embarrassment, humiliation, mental anguish, and depression" were insufficient to survive summary judgment on a claim for wrongful intrusion into private affairs); *Geeslin v. Bryant*, 453 F. App'x 637, 640 (6th Cir. 2011) ("While [the plaintiff] generally described symptoms including anxiety and sleeplessness following the incident, we find this is not evidence of a '*severe* mental injury,' which is required for this claim to survive summary judgment."). All that the Students put forward in their complaint and the record are generalized statements, unsupported by medical records or other testimony that would allow a factfinder to determine the seriousness of the alleged injury. There is simply insufficient evidence to support their allegations as a matter of law. Therefore, the Students failed to satisfy the requirements for a claim of wrongful intrusion into private affairs, making summary judgment appropriate. *See Roberts v. Dunbar Funeral Home*, 339 S.E.2d 517, 520 (S.C. Ct. App. 1986) (affirming a trial court's dismissal of a wrongful intrusion into privacy claim where there was no evidence of serious mental or physical injury caused by the misconduct); *Craig v. Andrew Aaron & Assocs., Inc.*, 947 F. Supp. 208, 211, 213– 14 (D.S.C. 1996) (concluding that evidence that the plaintiff was "very upset" and fearful

was insufficient to support a claim for wrongful intrusion into private affairs).[3] As a result, we affirm the district court's judgment, albeit for a different reason than the district court.[4]

### B.

Although the above analysis would also lead us to affirm the district court's denial of class certification, we have an additional basis for doing so given the Students' failure to challenge on appeal a separate ground the district court relied on to deny class certification. As the district court explained in its order, the Students wholly failed to address the superiority requirement of class certification in their motion before the district court. *See EQT Prod. Co.*, 764 F.3d at 365 ("[A] class certified under [Federal Rule of Civil Procedure 23(b)(3)] must satisfy all of Rule 23(a)'s prerequisites and two additional requirements: predominance and superiority.").

---

[3] That the Students failed to establish an injury sufficient for success under the merits of their claim does not necessarily mean that they also failed to establish an injury sufficient for purposes of Article III standing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[A]n injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law."); *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) ("Injury in fact is a low threshold, which we have held 'need not be capable of sustaining a valid cause of action[.]'" (citation omitted)). Indeed, we conclude that the Students have adequately demonstrated an Article III injury, giving us jurisdiction over their appeal. *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (stating that allegations of general anxiety and stress are sufficient to confer standing).

[4] The Students also argue that even if summary judgment was appropriate, because the case was originally removed from state court and the district court based its decision on a lack of Article III standing, the proper remedy was remand to the state court under 28 U.S.C. § 1447(c). However, because we affirm the grant of summary judgment based on the Students' failure to establish the prerequisites for a wrongful intrusion claim and not on standing grounds, we need not address that argument. *See* 28 U.S.C. § 1447(c).

Given that the Students had the burden to prove superiority and yet failed to make any argument that would permit the district court to make such a finding, the court appropriately denied class certification. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 458 (4th Cir. 2003) (stating that the party seeking class certification has the burden of proving superiority). Any argument to the contrary was forfeited, and we need not address it further. *See Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Landsdowne, LLC*, 713 F.3d 187, 206 (4th Cir. 2013).

### III.

Accordingly, we affirm the judgment of the district court.

*AFFIRMED*